Ernest F. THIBAULT, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–885.

United States Court of Veterans Appeals.

Decided Sept. 15, 1993.

As Amended Oct. 4, 1993.

Ernest F. Thibault, pro se.

Robert E. Coy, Acting Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, Washington, DC, were on the pleadings, for appellee.

Before FARLEY, MANKIN and HOLDAWAY, Judges.

MANKIN, Judge:

Appellant appeals a May 8, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for nine separate claims and denied entitlement to an increased (compensable) rating for hearing loss of the left ear. On January 21, 1993, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance. On February 1, 1993, appellant

filed an opposition to the Secretary's motion, by which he also withdrew all claims except those for service connection for lumbar disc disease, disability of the feet, including metatarsalgia, and tendinitis of the right elbow. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991).

## I. BACKGROUND

Appellant had active service in the United States Air Force from August 1954 until August 1958 and from September 1958 until September 1974. Service medical records reflect complaints of low back pain and muscle strain in October 1969 and June 1970. R. at 108, 111. A July 1970 service radiological report indicates sacralization (a congenital anomaly in which the fifth lumbar vertebra is fused to the sacrum in varying degrees, WEBSTER'S MEDICAL DESK DICTIONARY 629 (1986)). No other defects were noted. R. at 113. In September 1970, appellant complained of early morning back pain and difficulty getting out of bed in the morning. He was examined and diagnosed with low back pain and unstable back, and exercise therapy was recommended. R. at 118. Appellant's service discharge examination did not reveal any musculoskeletal abnormalities; however, the examination report notes that appellant suffered back pain in 1970 resulting from being overweight. R. at 145–46.

Appellant's entrance examination report reveals a history of foot trouble before service. R. at 36. In January 1962, he was treated for athlete's foot, which he claimed to have had during the prior ten-year period. He also reported itching, peeling, and lesions of the feet. R. at 61. In April 1968, appellant twisted his left ankle. R. at 102. His service discharge examination indicates normal feet, but notes a history of fungus on both feet during service, which was self treated. R. at 146. No residuals from an ankle injury are indicated in the discharge examination report.

Appellant submitted an application for compensation or pension in December 1975. R. at 173. On the application, he did not claim any of the disabilities currently on appeal before the Court. In April 1990, appellant submitted his first claim for service connection for foot problems "due to excessive standing" and he noted that, as a result of his disability, he was required to wear metatarsal pads in all of his shoes. R. at 266–67. The record contains copies of two prescriptions and receipts for metatarsal pads, dated in December 1986 and May 1989. R. at 215, 240. In a subsequent letter to the Department of Veterans Affairs (VA) in May 1990, appellant also claimed that he had lumbar disc problems which were secondary to his foot problems. R. at 272. In support of his claim for service connection for foot problems, appellant submitted a letter from F.J. Ammatelli, M.D., who stated that he had treated appellant in December 1986 for plantar pain in the area of the ball of his feet. The examination of appellant's feet revealed local tenderness. Dr. Ammatelli opined that "he had an element of metatarsalgia related to past long periods of activity on foot particularly during his military service years." R. at 274. Service connection for a foot condition, including metatarsalgia, and lumbar disc condition was denied by rating decision dated June 28, 1990. R. at 275–78.

Appellant submitted his claim for "tennis elbow" in June 1990. He also reiterated his claim for service connection for foot problems and requested service connection for a herniated disc, in addition to other disabilities. R. at 280–81. The claims were denied by the Regional Office (RO) on July 11, 1990. R. at 282. Appellant filed a Notice of Disagreement (NOD) in July 1990 and requested a personal hearing. R. at 283. A Statement of the Case was issued in August 1990. R. at 293. Service connection for these disabilities was again denied by the RO on August 17, 1990. R. at 294. Subsequently, appellant filed a timely Form 1–9 appeal to the BVA. R. at 298. Appended to the form was a letter in which appellant attributed his metatarsalgia to prolonged standing and marching during service. R. at 300. He also stated that tennis elbow was the result of daily handball or racquetball playing over a ten-year

span during service. R. at 301. In support of his claims, appellant submitted "buddy letters" from fellow servicemen, who stated that during service appellant was an avid racquetball player and jogger. R. at 311–15.

Appellant gave sworn testimony at a personal hearing held on October 29, 1990. R. at 316. He testified that excessive physical activity during service led to his bilateral foot disability. He was unable to recall complaining about or receiving treatment for any foot problems during service. R. at 319. Appellant stated that he began having problems with his feet in 1980, six years after discharge. He attributed tendinitis of the right elbow to physical training in the service and to playing racquetball on a daily basis while in service. R. at 320. He stated that tennis elbow was first diagnosed in service when he was treated for bursitis in his shoulders, and that he had received cortisone shots in his elbow during and after service. R. at 326. Appellant also stated that he had been hospitalized in 1983 for low back disc problems. R. at 331. His service representative suggested that the veteran's previously service-connected diabetic condition, rated 20% disabling (R. at 253), could explain his back pain. R. at 322.

Service connection for each of the claimed disabilities was denied by RO decision on November 9, 1990. R. at 337. Appellant filed an NOD to that decision and submitted a Form 1–9 appeal in December 1990. R. at 346, 349. In support of his claim, appellant submitted a letter from M. Scott Beall, M.D., who had treated appellant's tennis elbow and lower back condition. In the letter, Dr. Beall described appellant's current disabilities but did not state whether he believed they were related to service. R. at 351. After reviewing the new evidence, the RO confirmed the prior denials by decision dated January 21, 1991. R. at 360. In February 1991, appellant submitted a letter in which he conceded that his claimed disabilities are not recorded in service medical records, but maintained that, nevertheless, he had received treatment for "tennis elbow" during

service. R. at 370. On August 6, 1991, the BVA remanded to the RO for further development and adjudication. R. at 376. In October 1991, Bruce Henson, M.D., submitted a letter on behalf of appellant, stating that he had treated appellant for diabetes mellitus, and that he had recommended orthotic inserts for appellant's foot disability to prevent the development of chronic ulcerations. R. at 392. In September 1991, Dr. Henson referred appellant to W. Christopher Cox, D.P.M., who reported that appellant had been having foot problems for "quite a while" and that they were gradually becoming worse. R. at 401. Appellant received a VA examination in September 1991. The examining physician reported that appellant exhibited tenderness over the left metatarsal bones. The impression was bilateral metatarsalgia. The physician commented that he did not believe that appellant's condition was a form of diabetic polyneuropathy or secondary to diabetes mellitus. R. at 410. An RO decision on remand denying appellant's claims was issued on October 16, 1991. R. at 432. Appellant appealed to the BVA, which issued the decision now on appeal before the Court.

## II. ANALYSIS

■ The Court must affirm factual determinations of the BVA unless they are found to be "clearly erroneous." 38 U.S.C.A. § 7261(a)(4) (West 1991); *see Lovelace v. Derwinski,* 1 Vet.App. 73 (1990); *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). In deciding whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert,* 1 Vet.App. at 53.

■ Although service medical records indicate that appellant experienced back pain during service, his discharge physical revealed no abnormality of the spine or other defects. The July 1970 X-ray of appellant's lumbosacral spine indicated sacralization due to spina bifida occulta, which, as the

BVA noted in its decision, is a developmental disorder for which benefits may not be granted. *Ernest F. Thibault*, BVA 92–11440, at 11 (May 8, 1992); *see* 38 C.F.R. § 3.303(c) (1992). Appellant stated during the 1990 hearing that he was hospitalized for back problems in 1983. The record reveals that appellant was hospitalized in 1985 for treatment of a herniated disc. R. at 206, 218. In 1989, Dr. Ammatelli diagnosed lumbar discopathy. R. at 236. The evidence indicates that lumbar disc disease became manifest many years after service discharge. Thus, the BVA concluded that the back pain and muscle spasm present during appellant's second period of service was acute and transitory, and that approximately four years prior to discharge they were resolved without residuals. *Thibault*, BVA 92–11440, at 11–12. In addition, the evidence of record does not support the contention of appellant's representative that appellant's back pain is secondary to his service-connected diabetic condition. The Court holds that the BVA's decision is supported by evidence of record and therefore is not clearly erroneous. 38 U.S.C.A. § 7261(a)(4).

■ Appellant has claimed that his bilateral foot condition was caused, variously, by lumbar disc disease, excessive physical activity during service, and service-connected diabetes mellitus. The evidence of record indicates that appellant suffered no residuals of his in-service foot fungus or of a sprained left ankle. In addition, service records contain no complaints of foot pain due to strenuous exercise. The Board considered, but rejected, Dr. Ammatelli's statement that appellant's metatarsalgia was related to service, because it found that the physician's opinion simply recapitulated appellant's statement to him, and determined that Dr. Ammatelli's conclusion was not supported by the clinical evidence of record. *Thibault*, BVA 92–11440, at 12–13. With regard to appellant's claim that his foot condition was caused by diabetes mellitus, the BVA determined that the mere fact that Dr. Henson had recommended orthotic inserts for appellant's shoes to *prevent* the development of ulcerations on appellant's feet was not sufficient to estab-

lish that appellant's disability of the feet was secondary to diabetes mellitus. The Board concluded, based upon the September 1991 VA examination, that appellant's bilateral foot disability was not secondary to diabetes mellitus. The Court holds that there is a plausible basis in the record to support the BVA's denial of service connection for disability of the feet, including metatarsalgia. *Gilbert*, 1 Vet.App. at 53.

■ Appellant's service medical records show no evidence of a disability of the right elbow, except for a clinical notation in January 1973 which reported pain radiating from his right shoulder down to his elbow. In its decision, the Board observed that pain radiating from another anatomical area does not indicate pathology of the elbow. *Thibault*, BVA 92–11440, at 18. The BVA determined that there was virtually no evidence of pathology of the elbow during service and that the record was devoid of evidence of an elbow disability until more than a decade after service. During an orthopedic examination in 1976, appellant complained of pain in his shoulder, but did not mention any problems with his elbow. Appellant did not initiate his claim for tennis elbow until June 1990, and the record contains no evidence of pathology of the right elbow until Dr. Beall's December 1990 statement that he had treated appellant's elbow. The BVA's denial of service connection for tendinitis of the right elbow or tennis elbow is supported by evidence in the record and is not clearly erroneous.

## III.  CONCLUSION

Upon review of the record, appellant's brief, and the Secretary's motion, the Court holds that there is a plausible basis in the record for the BVA's denial of service connection for lumbar disc disease, disability of the feet, including metatarsalgia, and tendinitis of the right elbow. *Gilbert*, 1 Vet.App. at 53. Moreover, the Court holds that the BVA's thorough discussion of all of the evidence of record satisfies the "reasons or bases" requirements of 38 U.S.C.A. § 7104(d)(1) (West 1991) and the benefit of

the doubt doctrine of 38 U.S.C.A. § 5107(b) (West 1991). Accordingly, the Secretary's motion for summary affirmance is granted and the May 8, 1992, decision of the Board is **AFFIRMED.**