# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-0987

L.E. JOHNSON, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 14, 2009                                                     Decided  January 21, 2010)

*Robert V. Chisholm*, with whom *Landon E. Overby*, both of Providence, Rhode Island, was on the brief for the appellant.

*Millicent Gompertz*, with whom *William Gunn*, General Counsel, *R. Randall Campbell*, Assistant General Counsel, and *Kenneth A. Walsh*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, HAGEL, and SCHOELEN, *Judges*.

PER CURIAM: Veteran L.E. Johnson appeals through counsel a February 20, 2007, Board of Veterans' Appeals (Board) decision that denied him disability compensation for a low-back condition because it was not service connected. For the reasons stated below, the decision of the Board will be affirmed.

## I.  FACTS

Mr. Johnson served in the U.S. Army in consecutive periods from February 14, 1975 through February 13, 1977, and from February 14, 1977 to June 25, 1979.  On February 11, 1977, near the end of Mr. Johnson's first period of service, he was treated for back pain lasting three days. The

records do not indicate the etiology of this pain.

In February 1978, approximately one year into Mr. Johnson's second service period, he was treated for a back problem. The examining physician opined that Mr. Johnson had an "L-5 strain" and a transverse[1] process at L-1 that was "probably old." Record (R.) at 64. Mr. Johnson's service medical records indicate that in late February 1978 he claimed that his back pain began after he fell from a truck, and he later stated that the fall occurred in January 1978. In May 1979, Mr. Johnson was charged with violating the Uniform Code of Military Justice. In June 1979, Mr. Johnson acknowledged his guilt and was discharged under other than honorable conditions.

In September 1979, Mr. Johnson was granted VA benefits for disabilities incurred or aggravated during his first service period ("eligible" period of service), but the Secretary found that his second period of service was under other than honorable conditions ("ineligible" service period), which precluded him from entitlement to VA benefits for disabilities incurred or aggravated during that time. In October 1979, Mr. Johnson applied for VA benefits for a back condition. One month later, a VA physician diagnosed him with spina bifida.[2] In March 1980, the regional office found that Mr. Johnson's back condition was a "developmental abnormality not aggravated by service" that could not be service connected because there was no evidence that it was aggravated during service. R. at 144. Mr. Johnson did not appeal the decision, and it became final.

Mr. Johnson was involved in automobile accidents in 1993 and 1999. In September 2002, he sought to reopen his claim for entitlement to benefits for a low-back condition. In January 2003, the regional office reopened Mr. Johnson's claim, but denied it on its merits. Mr. Johnson submitted a Notice of Disagreement and attached a letter from his private physician opining that he acquired a back condition while in the military.

In July 2005, the Secretary provided Mr. Johnson with a physical examination. The physician examined Mr. Johnson, his medical records, and x-rays of his back from 1977, 1993, 1999, and 2004. The examiner opined that Mr. Johnson's back abnormality had not undergone

---

[1] "Transverse" means "situated at right angles to the long axis of a part." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1982 (31st ed. 2007) [hereinafter DORLAND'S]

[2] "Spina bifida" is a "developmental anomaly that is a kind of neural tube defect, characterized by defective closure of the vertebral arch, through which the spinal cord and meninges may protrude." DORLAND'S, 1733.

"degenerative change" since 1977 and that "his current back disability is not related to his period of [eligible] service from February 1975 to February 1977." R. at 418.

In February 2007, the Board issued the decision here on appeal. The Board found that Mr. Johnson's current back condition was spina bifida – a "developmental abnormality" or "congenital defect" – that was neither incurred in nor aggravated by his period of honorable military service. R. at 6; *see also* 38 C.F.R. § 3.303(c) (2009); VA Gen. Coun. Prec. 82-90 and 67-90 (both July 18, 1990). The Board also noted that although service connection may be awarded for an injury or disease incurred during a period of eligible service that was superimposed on a congenital defect, the congenital defect itself is not subject to in-service incurrence or aggravation, and service connection cannot be awarded for such defects.

Turning to Mr. Johnson's medical history, the Board found that Mr. Johnson first complained of back pain during his period of eligible service on February 11, 1977. The Board also noted that Mr. Johnson complained of back pain after falling from a truck during his ineligible period of service. The Board stated that it could "only consider disabilit[ies] incurred or aggravated during his initial period of honorable service from February 1975 to February 1977." R. at 5. The Board addressed whether Mr. Johnson's February 1977 back pain complaint could be considered "chronic" pursuant to 38 C.F.R. § 3.303(b) (2009), but found that "S[ervice] M[edical] R[ecord]s during [Mr. Johnson's] honorable period of service document only one instance concerning a complaint of back pain, providing very negative evidence against a finding of a chronic low back condition in service during this period." R. at 5. The Board also observed that Mr. Johnson was involved in automobile accidents in 1993 and 1999, and found that Mr. Johnson's current back pain could be attributed to these accidents. The Board further noted a July 2005 VA examination report did not demonstrate any sort of low-back injury or disease "superimposed" on his spina bifida. R. at 6. The Board ultimately found that the weight of the evidence was against his claim, and denied disability compensation for a low-back condition.

On appeal here, Mr. Johnson argues that the Board erred by stating that it could consider only disabilities incurred or aggravated during his period of eligible service because evidence of back pain during his ineligible period of service could be evidence of either a chronic disease or continuity of symptomatology that should have been considered. He asserts that the Board read an express

3

limitation into the chronic disease and continuous symptom provisions of 38 C.F.R. § 3.303(b), when no such limitation exists. Mr. Johnson also argues that the Board relied on an inadequate medical examination in finding that his developmental low-back disability was not aggravated by service, because the July 2005 VA examiner did not specifically make such a finding. Finally, he argues that the Board was obligated to return the July 2005 examination report as incomplete for adjudication purposes, because it did not contain an authenticating signature, as required by the VA Adjudication Procedure Manual (M21-1MR).

In response, the Secretary argues that the Board may not consider evidence from an ineligible service period when determining whether a disease incurred or aggravated in an eligible period of service is chronic, because service connection must be based on the date that the disease is established as chronic (which must be during an eligible period of service). The Secretary also asserts that the weight of the evidence is against any finding that Mr. Johnson incurred a chronic disease during his eligible period of service, or that the disease was aggravated during that period. However, the Secretary, in his brief, agrees that evidence of symptoms occurring during an ineligible service period may be considered when a veteran asserts that he displayed continuous symptoms of a disease or injury that began during a prior period of eligible service. The Secretary contends that the Board did not rely on an inadequate medical examination because the July 2005 VA examiner reviewed x-rays of Mr. Johnson's back and found no degenerative change in his spina bifida over the course of 27 years. Finally, the Secretary argues that the Board did not err in relying on an unsigned examination report because the Secretary confirmed that the July 2005 examination report was transmitted in compliance with the applicable M21-1MR requirements.

## II. ANALYSIS

### A. Consideration of Evidence From an Ineligible Service Period
### For Purposes of 38 C.F.R. § 3.303.

In *Savage v. Gober*, 10 Vet.App. 488, 495 (1997), the Court held that postservice evidence of continuity of symptoms or a chronic disease could suffice to establish that a disability had been incurred during a prior period of service. Although *Savage* did not address whether evidence of continuity of symptoms or a chronic disease during a period of *ineligible* service could suffice to

4

establish a disability had been incurred during a prior period of eligible service, the parties agree that evidence from the ineligible period of service of continuity of symptoms can suffice to establish incurrence of a disability during the prior period of eligible service.

However, the parties differ with regard to whether evidence of a chronic disease during a period of ineligible service may be considered by the Board to establish that the chronic disease was initially occurred during a prior, eligible period of service (with the Secretary contending it may not be considered). Additionally, the parties disagree over whether the Board failed to consider evidence from Mr. Johnson's ineligible period of service of continuous symptoms from his eligible period of service. For the reasons stated below, we need not resolve the parties' dispute on these issues. *See Norvell v. Peake*, 22 Vet.App. 194, 200 (2008) ("'[F]ederal courts are to decide only "actual controversies by judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it."'" (quoting *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) (quoting *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960)))).

In this instance, the Board found that Mr. Johnson's back disability was diagnosed as spina bifida – which is a congenital defect and not a basis for VA benefits[3] – and further found no evidence that Mr. Johnson suffered from any superimposed disease or injury during his eligible period of service or within the presumptive period (thereby precluding any continuous symptoms extending from the eligible service period or the presumptive period). Inasmuch as Mr. Johnson does not argue that these findings are clearly erroneous, there is no basis for an award of VA benefits for Mr. Johnson's low-back condition. *See Quirin* and *Thibault*, *supra* note 3; *see also* 38 U.S.C. § 7261(a)(4) (Court must review findings of fact for clear error); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that

---

[3] *See*, *e.g.*,*Quirin v. Shinseki*, 22 Vet.App. 390, 394 (2009) ("[C]ongenital or developmental defects 'are not diseases or injuries within the meaning of applicable legislation.'" (quoting 38 C.F.R. § 3.303(c))); *Thibault v. Brown*, 5 Vet.App. 520, 522-23 (1993) (recognizing that spina bifida is a developmental disorder for which benefits may not be awarded).

a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395(1948))).

## B. Adequacy of Medical Examination.

Mr. Johnson argues that the July 2005 VA medical examination relied upon by the Board was inadequate, because the examiner did not specifically opine whether his developmental low-back disability was aggravated by eligible service. This argument fails for two reasons. First, as the Board correctly found and as noted above, spina bifida cannot be aggravated because it is a congenital defect. Second, although the July 2005 medical examiner did not specifically opine as to whether Mr. Johnson aggravated his spina bifida during his eligible service period, the Board noted that the examiner conducted a physical examination of Mr. Johnson; reviewed the claims file and medical records to include x-rays taken in 1977, 1993, 1999, and 2004; opined that Mr. Johnson's developmental abnormalities did not undergo any degenerative change between 1977 and 2004; opined that there were no other abnormalities other than his longstanding developmental abnormalities (which would also negate the question of any "superimposed" disability); and opined that Mr. Johnson's current back disability was not related to his eligible service. In sum, the record reflects that the July 2005 VA medical examiner based his opinion on Mr. Johnson's history and his medical records, and the examiner explained the basis for his opinion. *See D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008) (holding that a medical opinion is adequate where it is based upon the veteran's medical history, examinations, and the also describes the disability in sufficient detail); *see also Green v. Derwinski*, 1 Vet.App. 121, 123-24 (1991) ("[F]ulfillment of the statutory duty to assist . . . includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one."). Mr. Johnson fails to demonstrate that the examiner's opinion was inadequate, or that the Board otherwise erred by assigning the opinion probative weight. *See Hilkert*, *supra*.

Mr. Johnson also argues that the Board was obligated to return the July 2005 VA examiner's report as incomplete for adjudication purposes because it was unsigned and because there was no indication that the report was transmitted via the Compensation and Pension Record Interchange (CAPRI). *See* M21-1MR, pt. III, subpt. iv, ch. 3, § D-3 (requiring that reports of physical

examinations must be reviewed or signed by the examining physician, unless the report is transmitted via CAPRI). However, this argument was not presented below, and Mr. Johnson fails to demonstrate the clear evidence of irregularity that is necessary to overcome the presumption of regularity that attaches to the actions of Government officials. *See Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004) ("The presumption of regularity provides that, in the absence of clear evidence to the contrary, the court will presume that public officers have properly discharged their official duties."); *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001) ("The [presumption of regularity] doctrine thus allows courts to presume that what appears regular is regular, the burden shifting to the attacker to show the contrary."); *cf. Rizzo v. Shinseki*, 580 F.3d 1288, 1291 (Fed. Cir. 2009) ("Absent some challenge to the expertise of a VA expert . . . [there is] no statutory or other requirement that VA must present affirmative evidence of a physician's qualifications in every case as a precondition for the Board's reliance upon that physician's opinion."); *Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (Board must address only those issues raised by claimant or reasonably raised by record).

In this instance, although the copy of the medical report is not signed, Mr. Johnson fails to demonstrate that the report was not transmitted via the CAPRI system, as permitted by the M21-1MR,[4] or that it otherwise is inadequate, so as to rebut the presumption of administrative regularity. *See Hilkert*, *supra*; *see also Shinseki v. Sanders*, 129 S.Ct. 1696, 1706 (2009) (appellant bears burden of demonstrating prejudice on appeal).

## III. CONCLUSION

Upon consideration of the foregoing, the Board's February 20, 2007, decision is AFFIRMED.

---

[4] As a matter of course, the Secretary argues that the medical report was transmitted through CAPRI, and he attached to his brief a copy of the July 2005 VA examination report and an image from a computer screen that he argues proves that the report was transmitted in compliance with M21-1MR standards. Secretary's Br. Appendix (App.) at 1. This document was generated by the Secretary during the pendency of Mr. Johnson's claim and its validity is not questioned by Mr. Johnson. *See Macwhorter v. Derwinski*, 2 Vet.App. 133, 136 (1992) (holding that a party's failure to respond to a legally plausible position in an opposing brief allowed the Court to assume the point raised by the opposing brief). Accordingly, it is deemed to have been before the Board, and therefore properly considered here to the extent needed. *See Bell v. Derwinski*, 2 Vet.App. 611, 613 (1992) (holding VA-generated documents to be in the possession of the Secretary and the Board at the time of the Board decision, and thus constructively part of the record of proceedings, as mandated by 38 U.S.C. § 7252(b)).

HAGEL, *Judge*, concurring: I write separately because I disagree with the Court's finding that an unsigned report of a medical examination, without any further evidence to explain its regularity, may be used in the adjudication of Mr. Johnson's claim for disability compensation. Because I believe that the Secretary has established that the July 2005 examiner's report was properly transmitted, however, I concur in the result.

Mr. Johnson argues that the Board was obligated to return the July 2005 VA examiner's report as incomplete for adjudication purposes because it was unsigned—and because there was no indication that the report was transmitted via the Compensation and Pension Record Interchange. *See* M21-1MR, pt. III, subpt. iv, ch. 3, § D-3 (requiring that reports of physical examinations must be reviewed or signed by the examining physician, unless the report is transmitted via the Compensation and Pension Record Interchange). The question here is not whether there is a presumption that the Government official who prepared this report properly discharged his duties by either signing or properly transmitting the examination report; such a presumption undoubtedly exists. *See Marsh v. Nicholson*, 19 Vet.App. 381, 385 (2005). Instead, the relevant question is whether that presumption of regularity is rebutted by evidence in the record that the report was not signed; bears no indication that the unsigned copy was the final opinion of the medical examiner; and was transmitted by a method authorized by regulation. I would hold that such evidence is sufficient to rebut the presumption of regularity.

Mr. Johnson is correct in alleging that the copy of the July 2005 VA examiner's report in the record is not signed. Moreover, there is no indication on the face of that report that it was transmitted via the Compensation and Pension Record Interchange. This state of the evidence would appear to violate the M21-1MR requirements and thus make consideration of the examination report by the adjudicator erroneous.

Although the Secretary does not argue that the Court should apply the presumption of regularity, the Court would have us simply presume that the examination report was properly transmitted. I find two reasons why that presumption should not apply here. First, the plain language of the M21-1MR provision addressing examination reports does not direct VA rating officials to presume that an unsigned report was properly transmitted. As the rule mandates, a report of examination must be signed by a physician; there are no exceptions. The original, signed copy

8

is required to be maintained in the claimant's VA medical file. The M21-1MR permits the adjudicator to consider the contents of a medical examination when one of two conditions are met: (1) A signed copy of the examination is presented, or (2) an unsigned copy is presented *if* the unsigned copy is transmitted to the agency of original jurisdiction through the Compensation and Pension Record Interchange. *See* M21-1MR, pt. III, subpt. iv, ch. 3, § D-3 (Dec. 29, 2007 change).[5] There is no room for a presumption to operate in the context of an explicitly either/or rule.

Second, the presumption of regularity, upon which the Court relies here, is not absolute. After a court presumes that what appears to be regular is regular, the burden shifts "to the attacker to show the contrary." *Butler v. Prinicipi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001). The only evidence that could show that a report was unreliable for purposes of use in an adjudication is (1) the fact that the report is unsigned, (2) the fact that the report does not appear *on its face* to have been transmitted by authorized means, and (3) the absence of evidence of proper transmission by records contained in the administrative system that VA uses to track such transmissions. Although a veteran can establish the first two means of rebutting the presumption of regularity, the evidence necessary to establish the third rebuttal method (access to VA's administrative system) remains exclusively in VA's control. In this case, Mr. Johnson asserts that the fact the document is unsigned, and the fact that there is no evidence in the record on appeal that the document was submitted via the Compensation and Pension Record Interchange, is sufficient, without more, to rebut the presumption that the medical opinion was genuine. The Court would hold that the first two rebuttal methods are insufficient to rebut the presumption that the medical report was valid for rating purposes. By so holding, the Court creates an unduly onerous path for a veteran to rebut the presumption of regularity.

A veteran who notices that an examination report in his record appears to be irregular does not have the means to access VA's computer system to determine whether an unsigned examination report was, in fact, transmitted by the Compensation and Pension Record Interchange. In practice, requiring a veteran to navigate the VA administrative system to which he has no access to find out whether an unsigned report was properly transmitted to the adjudicator would strip any protection

---

[5] The purpose for this rule is to ensure that the adjudicator considers only an examiner's final opinion, not a preliminary draft opinion. The rule serves a valid purpose and is not just intended as a trap for the unwary.

afforded by the M21-1MR provision and would transform the rebuttable presumption of regularity into an essentially irrebuttable presumption.

In this case, Mr. Johnson has presented evidence that the July 2005 examination report did not comply with the applicable M21-1MR requirements. This, in my opinion, is sufficient to rebut the presumption of regularity. In other words, I believe that the presence of an unsigned report of a medical examination, without any notation on the document itself or without other evidence that the unsigned report was not required to bear the signature of the reviewing physician, rebuts any presumption that the medical examination is regular. In response, the Secretary has introduced evidence that the report was properly transmitted through internal VA means specifically authorized for such transmission. In his brief, the Secretary attached a copy of the July 2005 VA examination report and an image from a computer screen that he argues proves that the report was transmitted in compliance with M21-1MR standards. Secretary's Br. App. at 1. Normally, this Court is precluded by statute from considering any material that was not contained in the "record of proceedings before the Secretary and the Board." 38 U.S.C. § 7252(b); *Rogozinski v. Derwinski*, 1 Vet.App. 19 (1990) (review in the Court shall be on the record of proceedings before the Secretary and the Board). This does not mean, however, that the Court may only consider documents included in the record on appeal submitted to the Court. The dispositive question when presented with documents that are not included in the record on appeal is whether the documents are part of the record that was before the Board. 38 U.S.C. § 7252(b). The Court has given a broad reading to the meaning of what documents were before the Board. In *Bell v. Derwinski*, the Court held that VA-generated documents were constructively "before the Secretary and the Board" within the meaning of section 7251(b). 2 Vet.App. 611, 612-13 (1992). Because the transmittal documents introduced by the Secretary here were clearly generated by VA during the pendency of Mr. Johnson's claim, those documents were indeed "before the Board" and may be considered by the Court. *See* 38 U.S.C. § 7252(b); *Bell*, 2 Vet.App. at 613.

Having found that the Secretary's documents are properly before the Court, the next task is to determine what those documents actually establish. Although the transmittal documents alone may be insufficient to establish that the examination report was properly transmitted, Mr. Johnson does not contest the validity of the Secretary's proof. Therefore, I believe that the Secretary's

10

unchallenged assertion that the July 2005 VA examination report was transmitted through the Compensation and Pension Record Interchange is sufficient to find that the report was signed in accordance with the M21-1MR. *See Macwhorter v. Derwinski*, 2 Vet.App. 133, 136 (1992) (holding that a party's failure to respond to a legally plausible position in an opposing brief allowed the Court to assume the point raised by the opposing brief).

Finally, having stated my position on the application of the presumption of regularity in this case, I note also that this is a question that the Court did not need to consider. The argument that an unsigned medical report is not sufficient for rating purposes was not presented to the Board. Consequently, although the Court may hear legal arguments that were not raised to the Board on a claim that is properly before the Court, it is not required to do so. *See Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000) (holding that this Court has discretion to either address or remand arguments presented to it in the first instance, provided it otherwise has jurisdiction over the claim). Because the Board is in a better position to consider Mr. Johnson's argument regarding the authenticity of the medical report and to obtain evidence regarding whether the examination report has been prepared and properly transmitted in accordance with VA regulations, and because Mr. Johnson did not raise this argument below, the Court should, in my view, decline to consider this argument. *See Maggitt*, 202 F.3d at 1377.