# United States Court of Appeals
# for the Federal Circuit

———————————

**ARNOLD C. KYHN,**
*Claimant-Appellant,*

v.

**Eric K. Shinseki, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

———————————

2012-7003

———————————

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 07-2349.

———————————

Decided: May 3, 2013

———————————

PERRY A. PIRSCH, Berry Law Firm, PC, of Lincoln, Nebraska, argued for the claimant-appellant. Of counsel was JEANNE A. BURKE, of Omaha, Nebraska.

STEVEN M. MAGER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director. Of counsel on the brief were MICHAEL J.

TIMINSKI, Deputy Assistant General Counsel, and Jonathan E. Taylor, Attorney, United States Department of Veteran Affairs, of Washington, DC.

———————————

Before RADER, *Chief Judge*, LOURIE, AND WALLACH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* WALLACH.
Dissenting opinion filed by *Circuit Judge* LOURIE.

WALLACH, *Circuit Judge*.

Arnold C. Kyhn appeals from the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the Board of Veterans' Appeals' ("Board") denial of Mr. Kyhn's tinnitus claim. *Kyhn v. Shinseki*, 24 Vet. App. 228 (2011) ("*Kyhn II*"). In particular, Mr. Kyhn challenges the Veterans Court's reliance on affidavits that were not part of the record before the Board. Because the Veterans Court lacked jurisdiction to rely on this extra-record evidence, we vacate and remand.

## BACKGROUND

Mr. Kyhn served in the United States Army from May 1945 to October 1946. In February 1998, he filed a claim for service-connected hearing loss, which was denied by the Veterans Affairs ("VA") regional office ("RO"). Mr. Kyhn submitted a Notice of Disagreement ("NOD"), accompanied by medical evidence from his private audiologist that he suffered from hearing loss attributable to his military service. Mr. Kyhn also asserted in his NOD that he was seeking service connection for tinnitus. After various proceedings, the RO granted service connection for hearing loss at a 50% rating, but denied service connection for tinnitus. Mr. Kyhn did not appeal this decision and it became final.

In January 2004, Mr. Kyhn sought to reopen his tinnitus claim, and presented another letter from his

private audiologist stating that Mr. Kyhn's "history of noise exposure while in the military, without the benefit of hearing protection, . . . is quite likely . . . the beginning of [his] hearing loss and tinnitus." *Kyhn II*, 24 Vet. App. at 231. Although the RO declined to reopen the tinnitus claim, the Board found the private audiologist's statement constituted new and material evidence and remanded to the RO to afford Mr. Kyhn a VA examination to "ascertain the etiology and severity of any tinnitus that may be present." *Id.* The RO scheduled an examination for March 7, 2006, but Mr. Kyhn failed to attend. Not long after, the Board denied service connection for tinnitus, based on the evidence of record.[1] Mr. Kyhn appealed to the Veterans Court.

Before the Veterans Court, Mr. Kyhn argued, *inter alia*, that there was good cause for his failure to attend the VA examination because the VA failed to provide him with notice of when it was scheduled. The Veterans Court applied the presumption of regularity to presume that Mr. Kyhn had received notice of the examination, and affirmed the Board's denial of service connection.

To determine whether the presumption of regularity applied, the Veterans Court ordered the Secretary of Veterans Affairs ("Secretary") to provide the court with "information concerning the regular process by which VA notifies veterans of scheduled VA examinations." *Kyhn II*, 24 Vet. App. at 233. The Secretary complied and submitted two affidavits from VA employees, only one of whom professed personal knowledge of the regular

---

[1] The Board explained that when a veteran fails to attend a scheduled examination, "the claim shall be rated on the evidence of record." *In re Kyhn*, No. 99-21-607, slip op. at 5 (Bd. Vet. App. May 17, 2007) (citing 38 C.F.R. § 3.655).

practice for mailing such notice to veterans.[2]   Jo Ellen Bash, a manager at the VA Medical Center ("VAMC") in Omaha, Nebraska, stated that a scheduling clerk typically provided a veteran with notice of his VA examination by "electronically generat[ing] a letter to the veteran" from the Automated Medical Information Exchange system. J.A.88.

Relying on this evidence, the Veterans Court found the VA had a regular practice to provide veterans with notice of their VA examinations and applied the presumption of regularity to presume the VA had properly notified Mr. Kyhn in accordance with this practice.[3]   The Veterans Court further held that the absence of a copy of notice in Mr. Kyhn's claims file and prior irregularities in processing his claim did not "constitute clear evidence to rebut the presumption of regularity . . . ." *Kyhn II*, 24 Vet. App. at 236.

Having presumed that notice of the examination was mailed to Mr. Kyhn, the Veterans Court affirmed the Board's denial of Mr. Kyhn's tinnitus claim. *Id.* at 238. Mr. Kyhn then moved for rehearing and full court review,

---

[2]   The other employee, Margaret Bunde stated that the VA Medical Center, rather than the RO, was tasked with mailing the veteran notice of an examination. J.A.100.  However, as an employee of the RO and not the VAMC, Ms. Bunde was unable to describe how the VAMC mailed notice to veterans.

[3]   The Veterans Court decision discussed herein was issued on January 18, 2011, *Kyhn II*, 24 Vet. App. at 228, after panel reconsideration of an earlier decision issued on January 15, 2010, *Kyhn v. Shinseki*, 23 Vet. App. 335 (2010) ("*Kyhn I*"). Both *Kyhn I* and *Kyhn II* affirmed the Board decision and are similar in most respects, except that *Kyhn II* more fully explains the basis for admitting the affidavits and applying the presumption of regularity.

arguing that the panel's reliance on extra-record evidence was an improper departure from Veterans Court precedent. The motion for rehearing was denied. However, Chief Judge Kasold and Judge Hagel dissented from the denial, on the ground that the full court should decide the Veterans Court's authority to "obtain and consider evidence not in the record before the agency to resolve a non-jurisdictional issue." *Kyhn v. Shinseki*, 2011 U.S. App. Vet. Claims LEXIS 1566, *1–2 (Vet. App. July 25, 2011). Mr. Kyhn filed this timely appeal.

## DISCUSSION

This court's jurisdiction to review decisions of the Veterans Court is limited by statute. Pursuant to 38 U.S.C. § 7292(a), this court has jurisdiction to review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans] Court in making the decision." Except to the extent that a constitutional issue is presented, this court may not review "a challenge to a factual determination," or "a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). The Veterans Court's legal determinations are reviewed *de novo*. *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). Mr. Kyhn's appeal raises the legal question of whether the Veterans Court acted beyond its jurisdiction when it relied on evidence not in the record before the Board and engaged in first-instance fact finding. *See Winters v. Gober*, 219 F.3d 1375, 1379 (Fed. Cir. 2000) (reviewing the legal issue of whether the Veterans Court exceeded its statutory authority).

The Veterans Court has jurisdiction "to review decisions of the Board . . . on the record of the proceedings before the Secretary and the Board." 38 U.S.C. § 7252(a), (b); *see also Henderson v. Shinseki*, 589 F.3d 1201, 1212

(Fed. Cir. 2009) *rev'd and remanded on other grounds sub nom Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197 (2011) ("[T]he Veterans Court reviews each case that comes before it on a record that is limited to the record developed before the RO and the Board."). The Veterans Court's jurisdiction to review the Board is further "limited to the scope provided in section 7261 of [Title 38]." 38 U.S.C. § 7252(b). Section 7261 allows the Veterans Court to review "questions of law de novo, questions of fact for clear error, and certain other issues under the 'arbitrary, capricious, abuse of discretion, not otherwise in accordance with law' standard." *Garrison v. Nicholson*, 494 F.3d 1366, 1368 (Fed. Cir. 2007) (quoting 38 U.S.C. § 7261(a)). Moreover, section 7261(c) makes clear that "[i]n no event shall findings of fact made by the Secretary or the Board . . . be subject to trial de novo by the [Veterans] Court." 38 U.S.C. § 7261(c). This subsection "prohibits the Veterans Court from making factual findings in the first instance."[4] *Andre v. Principi*, 301 F.3d 1354, 1362 (Fed. Cir. 2002).

### 1. The Veterans Court Considered Evidence That Was Not In the Record Before the Board

In this case, the Veterans Court's decision denying relief for Mr. Kyhn relied upon affidavits from two VA employees, neither of which was in the record before the Board. Such reliance on extra-record evidence was in

---

[4]    Contrary to the dissent's position, section 7261 is relevant here even though the Board made no underlying finding of fact. By making an independent finding of fact absent an underlying factual finding by the Board, the Veterans Court both exceeds its jurisdiction to "review" the Board's decision under § 7252 *and* impermissibly engages in first-instance fact finding barred by § 7261. *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013).

contravention of the jurisdictional requirement that "[r]eview in the [Veterans] Court shall be on the record of proceedings before the Secretary and the Board." 38 U.S.C. § 7252(b).

On appeal, the Secretary argues that such reliance was permissible because "[i]t is well established that courts have discretion to take judicial notice of matters outside the record." Secretary's Br. at 18 (citing Fed. R. Evid. 201). However, to the extent the Secretary relies on Fed. R. Evid. 201 as authority for the Veterans Court's otherwise impermissible consideration of extra-record evidence, that reliance is misplaced.[5] The affidavits in this case were from a party's employees regarding otherwise unknown internal procedures. Such evidence is neither "generally known" nor "from sources whose accuracy cannot reasonably be questioned."[6] Fed. R. Evid.

---

[5]    Although the Federal Rules of Evidence are not generally applicable to the Veterans Court, the Veterans Court has relied on Fed. R. Civ. P. 201 in the past as justification for its consideration of extra-record materials. *See*, *e.g.*, *D'Aries v. Peake*, 22 Vet. App. 97, 105 (2008) (relying on Fed. R. Evid. 201(b) as authority to take judicial notice of a fact in DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1285 (31st ed. 2007), specifically, that "neurology is the medical specialty that deals with the nervous system").

[6]    Certain inconsistencies in Ms. Bash's affidavit confirm that her testimony was neither "generally known" nor from a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. For instance, she says the notification letters must be generated by the scheduling clerk, but later says the letters are "automatically generated." J.A.88–89. Nor does she testify to the regular procedure for mailing the letters, including whether address information is input manually or automatically or the number of business days before a letter is mailed.

201. Thus, they are not the "kinds of facts that may be judicially noticed." *Id.* (heading format modified); *see also Murakami v. United States*, 398 F.3d 1342, 1355 (Fed. Cir. 2005); *In re Kahn*, 441 F.3d 977, 990 (Fed. Cir. 2006). Nor, as the Secretary contends, are the affidavits of a party's employees similar to authorities such as VA manuals. *See Kyhn II*, 24 Vet. App. at 234 ("[W]hile VA has a written procedure for scheduling examinations that is set forth in its manuals, it does not have written instructions regarding the procedures it follows to notify a claimant of a scheduled examination."). The Veterans Court has rejected similar arguments in the past: "[The] characterization of the aforementioned materials as 'authorities' does not magically transform their status in this appeal. All of appellant's proffered supplementary materials are evidentiary in nature and, as such, may not come in through the back door by way of citation as 'supplemental authorities.'" *Godfrey v. Derwinski*, 2 Vet. App. 352, 355 (1992) (excluding television news program transcripts because "[t]hey obviously do not constitute legal authority; nor do they provide a description of 'facts not subject to reasonable dispute,'" and thus they "may not be considered in the first instance by the [Veterans] Court") (internal citations omitted). The affidavits in this case are similarly "evidentiary in nature" and may not be considered in the first instance by the Veterans Court.[7]

---

Nevertheless, she states that Mr. Kyhn's notice letter "would have been mailed out to his address of record on February 11 or 12, 2006." J.A.89.

[7] Contrary to the dissent's analysis, Dissenting Op. at 2–3, the Veterans Court's practice of admitting applications for attorney's fees is premised on independent statutory authority in the Equal Access to Justice Act ("EAJA") and is thus inapposite to its reliance on extra-record affidavits in this case. *See* 28 U.S.C. § 2412 (providing independent authority for the Veterans

The Secretary also argues that the Veterans Court's reliance on the newly-submitted evidence was permissible because "[i]t was Mr. Kyhn who prompted the Veterans Court's inquiry into VA's procedure by asserting, for the first time, before the Veterans Court that he had not received notice of the scheduled March 2006 VA examination . . . ." Secretary's Br. at 15. If true, the fact that Mr. Kyhn failed to previously raise his lack of notice argument would be relevant to whether he waived that argument before the Veterans Court,[8] but would not authorize the Veterans Court to act outside the bounds of its jurisdiction by relying on extra-record evidence. *Cf. Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."). Thus, the Veterans Court's reliance on Ms. Bunde's and Ms. Bash's affidavits exceeded the Veterans Court's limited jurisdiction to review the Board's decision based upon the record before the Board. *See* 38 U.S.C. § 7252(b).

### 2. The Veterans Court Improperly Engaged in Fact Finding in the First Instance

The Veterans Court further erred by relying on the extra-record evidence to make a finding of fact in the first

---

Court's admission and consideration of "an application for fees and other expenses."); *see also Bazalo v. Brown*, 9 Vet. App. 304, 307–308 (1996) *rev'd on other grounds, Bazolo v. West*, 150 F.3d 1380 (Fed. Cir. 1998) (noting a statutory amendment making "the EAJA applicable to [the Veterans] Court").

[8] The Veterans Court's decision contains a half-formed waiver analysis, but does not rely upon waiver as an alternative basis for its holding. *Kyhn II*, 24 Vet. App. at 235–236. On appeal, the Secretary does not argue waiver as an alternative basis for affirmance.

instance. *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (citing *Andre*, 301 F.3d at 1362). In particular, the court found the affidavits proved "that VA does have an established procedure for notifying claimants of [VA] examinations." *Kyhn II*, 24 Vet. App. at 234. The Veterans Court explained this was not an impermissible finding of fact, because it considered the affidavits solely "[a]s part of the de novo process for determining whether the presumption of regularity attaches . . . ." *Id.* at 233–234. However, this rationale does not transform the Veterans Court's factual finding into a legal conclusion.

This case differs from other instances where the presumption of regularity was premised upon independent legal authority rather than on evidentiary findings. *See, e.g.*, *Miley v. Principi*, 366 F.3d 1343, 1346–47 (Fed. Cir. 2004) (presuming that VA officials acted consistently with their legal duty under 38 U.S.C. § 7105(b)(1) to mail the veteran notification of a rating decision); *Butler v. Principi*, 244 F.3d 1337, 1340–41 (Fed. Cir. 2001) (presuming VA officials acted consistently with their legal duty under 38 U.S.C. § 5104(a) to mail the veteran notice of appeal rights). Here, the Veterans Court weighed the affidavits to find that the VA had a regular practice of providing notice of VA examinations. This finding improperly resulted from the "evaluation and weighing of evidence" in the first instance. *Deloach*, 704 F.3d at 1380. The Veterans Court's application of the presumption of regularity to this factual finding does not convert the underlying finding into a legal conclusion.[9]

---

[9] An analogy may be helpful. There is a rebuttable presumption that a properly-addressed and mailed letter has reached its destination. *Rios v. Nicholson*, 490 F.3d 928, 930–31 (Fed. Cir. 2007). Although this presumption is a rule of law, its application is triggered by the preliminary factual findings that the

To the contrary, the Veterans Court's fact finding in the first instance exceeded its jurisdiction to review the Board based on the record before the Board. *See id.*

## CONCLUSION

The Veterans Court improperly relied upon extra-record evidence to make a finding of fact in the first instance, and, in so doing, acted outside its statutorily-granted jurisdiction to review the Board's decision based upon the record before the Board. The dissent may be correct that undertaking the proper procedure in this case would ultimately result in the same outcome and "only further delay the proceedings." Dissenting Op. at 6. Nevertheless, Congress vested the Veterans Court with limited jurisdiction, and even the weighty interests of judicial economy cannot enlarge that which a statute has directly limited.[10] Because the Veterans Court exceeded

---

letter was properly addressed and mailed. Likewise, the presumption that VA officials properly sent Mr. Kyhn notice of his examination was based on the Veterans Court's preliminary finding, based on the affidavits, that the VA had a regular practice of providing notice of VA examinations. *Cf. Routen v. West*, 142 F.3d 1434, 1440 (Fed. Cir. 1998) (citing *Weinstein's Federal Evidence* § 301.02[1], at 301–07 (2d ed. 1997); *McCormick on Evidence* § 342, at 450 (John W. Strong ed., 4th ed. 1992)) (explaining that "predicate evidence" must be established before a presumption is triggered).

[10]     Although the dissent is concerned that reversal in this case could "set a standard" requiring repeated remands to the Board for factual finding, Dissenting Op. at 6, this opinion only requires that the Veterans Court follow the law confining its jurisdiction. Past decisions of this court have required the same. *See, e.g., Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (holding the Veterans Court lacked jurisdiction to engage in fact

its jurisdiction in deciding this case, its decision is vacated and remanded.[11]

## VACATE AND REMAND

_____

finding in the first instance, and explaining that remand to the Board was required if there was "insufficient factual development of the record").

[11] Having granted Mr. Kyhn's requested relief, we need not decide his additional arguments that the Veterans Court's reliance on extra-record evidence violated his due process rights and right to two administrative reviews.

# United States Court of Appeals for the Federal Circuit

---

**ARNOLD C. KYHN,**
*Claimant-Appellant,*

**v.**

**Eric K. Shinseki, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7003

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 07-2349.

---

LOURIE, *Circuit Judge*, dissenting.

I respectfully dissent from the majority's decision to vacate and remand the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the decision of the Board of Veterans' Appeals ("Board") holding that Kyhn lacked service connection for tinnitus. *Kyhn v. Shinseki*, 24 Vet. App. 228 (2011) ("Kyhn II"). Because I believe that the Veterans Court did not err in requesting information from the Department of Veterans Affairs ("VA") concerning its practice of scheduling and notifying veterans of medical examinations and also did not err in determining, based on the

VA's response, that Kyhn was presumed to have received that notice, I would affirm.

Under 38 U.S.C. § 7252, the Veterans Court is vested with the authority "to review decisions of the Board of Veterans' Appeals" and such review "shall be on the record of the proceedings before the Secretary and the Board." Section 7261(c) also states that "[i]n no event shall findings of fact made by the Secretary or the Board of Veterans' Appeals be subject to trial de novo by the Court." 38 U.S.C. § 7261(c). In my view, Kyhn's argument that the Veterans Court violated these provisions fails because neither of these provisions applies to the circumstances of this case. There was no finding of fact tried *de novo* by the Veteran's Court.

First, I note preliminarily that the Veterans Court's determination that the VA has a regular process for providing notice of scheduled examinations is not barred by § 7252(b). The Veterans Court has jurisdiction over a number of areas of seemingly first-instance factual inquiry that were not "on the record of the proceedings before the Secretary and Board" under § 7252(b), including determining both the regularity of procedure and relying on outside affidavits not in the record.

For example, the Veterans Court has taken judicial notice of affidavits to establish facts that were not relevant at the Board level. Fed. R. Evid. 201; *see B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988) ("Courts may take judicial notice of facts of universal notoriety, which need not be proved, and of whatever is generally known within their jurisdictions."); *Smith v. Derwinski*, 1 Vet. App. 235, 238 (1991) ("Courts may take judicial notice of *facts* not subject to reasonable dispute."). Further, the Veterans Court has considered affidavits in resolving jurisdictional disputes. *Clark v. Principi*, 15 Vet. App. 61, 62 (2001); *Timberlake v. Gober*, 14 Vet. App. 122, 132 (2000). The Veterans

Court has also reviewed evidence not in the record to resolve motions for attorney's fees. *E.g., Bazalo v. Brown*, 9 Vet. App. 304 (1996) (en banc), *rev'd on other grounds, Bazolo v. West*, 150 F.3d 1380 (Fed. Cir. 1998).

The Veterans Court likewise could have, if it needed to, taken judicial notice of VA procedures found in manuals existing at the VA prior to the appeal. *Johnson v. Shinseki*, 23 Vet. App. 344, 351 (2010); *cf. Marsh*, 19 Vet. App. at 386–87 (VA regulations relevant to establish VA procedure). Those procedures are not always set forth in published form, *Johnson*, 23 Vet. App. at 351; *Smith v. Shinseki*, 24 Vet. App. 40, 46 (2010), and, indeed, prior opinions of the Veterans Court have faulted the government for not filing affidavits of VA personnel to support an argument on the regularity of practice, *Posey v. Shinseki*, 23 Vet. App. 406, 410 (2010) ("At no time has the Secretary produced, or offered to produce, affidavits of VA personnel to support his argument that simply noting on an internal document that a Board decision was re-mailed on a particular date plausibly demonstrates the actual date the Board decision was re-mailed, nor did he file any attachments with his brief demonstrating an established policy for the re-mailing of Board decisions."); *see Chabebe v. Shinseki*, No. 09-0114, 2010 WL 3230804 (Vet. App. Aug. 16, 2010) ("The foundation of any presumption of regularity is a showing, by affidavit or otherwise, what the regular procedure may be.").

As with jurisdictional matters, evidence regarding regularity is not used to adjudicate the merits of a claim. Such evidence is only used to establish whether a presumption of regularity attaches. The affidavits in this circumstance were properly used to establish that presumption, not to establish the fact that Kyhn had been notified. In the limited circumstance where a VA procedure needs to be established, I believe that the Veterans Court can take judicial notice of VA procedures based on

affidavits provided by the VA that are not subject to reasonable dispute.

The majority relies on apparent inconsistencies in the affidavits to argue that the Veterans Court cannot take judicial notice of their contents. Majority Op. at 7 n.5 These arguments were not raised by Kyhn before the Veterans Court. Indeed, Kyhn, in moving for reconsideration, did not challenge the substance of those affidavits, only the procedure by which they were considered. Regardless, the alleged inconsistencies, such as whether the letter is generated and addressed automatically or manually and the number of days before mailing, are not controlling. Such a level of granularity is not significant. In this instance, the fact that the affidavits consistently note that a letter is generated, addressed according to the address on file, and then subsequently mailed is sufficient to establish the existence of the procedure.

Second, section 7261(c) is irrelevant here because there was no finding of fact by the Board that the Veterans Court reviewed *de novo*. The issue of the regular procedure of the VA only became relevant in response to a defense raised by Kyhn on appeal in the Veterans Court. Because it had not been raised below, the Board had no opportunity to engage in any findings of fact under § 7261(c) that could be subject to review by the Veterans Court.

The case relied on by the majority for arguing that § 7261(c) still applies despite the VA not engaging in any fact-finding, *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013), is inapposite as it does not discuss the presumption of regularity and ignores the circumstances, previously discussed when the Veterans Court can and does engage in limited fact-related finding in the first instance, including in establishing the presumption of regularity. Even so, irrespective of the appropriate

standard of review, because the VA made no fact-finding, I believe that § 7261(c) was not violated.

Moreover, the long-standing practice at the Veterans Court is to review the application of the presumption of regularity *de novo* as a matter of law. *E.g.*, *Marsh v. Nicholson*, 19 Vet. App. 381, 386 (2005). Under that standard, the question whether the presumption of regularity applies is not a finding of fact at all, and thus § 7261(c) would not apply even if the VA had addressed the presumption of regularity in the first instance. There is, however, a disconnect between our case law and that of the Veterans Court on the applicable standard of review, which the majority attempts to reconcile. *See Eschevarria-North v. Shinseki*, 437 F. App'x 941, 946–47 (Fed. Cir. 2011) (unpublished) (stating that the question of the presumption of regularity is either a question of fact or the application of law to fact). If the applicability of the presumption of regularity is a question of fact or application of law to fact, then we cannot review that determination, including the supposed conflicting contents of any affidavits, as it is beyond our jurisdiction. *See id.* But the question of the proper standard of review is not before us as the Board engaged in no actual fact-finding.

While the majority does not reach the due process issues raised by Kyhn, I would also agree with the Veterans Court that Kyhn was not deprived of due process. Both the Board and the RO considered his claim for service connection for tinnitus, and Kyhn had the opportunity to submit evidence before both entities. Kyhn, after being notified by the RO in 2006 that he failed to attend the VA examination, did not respond that he had not been notified of the examination. Indeed, he did not offer any explanation for his failure to attend. Instead, in response to the RO's denial of Kyhn's claim after he failed to appear, Kyhn represented that he had no other information to substantiate his claim and that he did not contest the notice of the examination. Kyhn did not even dispute that

the address the notice was mailed to was incorrect. Kyhn's failure to take advantage of the opportunities at the VA and at the Board is thus not a deprivation of agency review. *See Nat'l Classification Comm. v. United States*, 779 F.2d 687, 695 (D.C. Cir. 1985).

There is likewise no evidence that the Veterans Court denied Kyhn an opportunity to dispute the contents of the affidavits regarding the VA's regular notification procedure. Kyhn, in fact, did not dispute the accuracy of the affidavits at all in his supplemental briefing or offer any evidence to the contrary. Instead, he only opposed the propriety of the Board considering those affidavits. Again, Kyhn simply failed to take advantage of the opportunities afforded him and thus was not deprived of due process.

Finally, I recognize that in some circumstances the Veterans Court has remanded a case to the Board for limited fact-finding on non-jurisdictional notice issues. *E.g.*, *Mayfield v. Nicholson*, 20 Vet. App. 98, 99 (2006) (remanding for a factual determination by the Board whether the notice given to the veteran was sufficient). However, in this case, where the evidence is only relevant to establish as a matter of law the regular procedure of the VA, not the merits of the actual notice in a given claim, requiring such a remand would only further delay the proceedings, needlessly churning the system to establish only the existence of a regular practice that would ultimately still be subject to *de novo* review by the Veterans Court under existing precedent.

To reverse would likely cause a remand to the Board to determine its own practice in the first instance. Because waiver is rare at the pro-claimant Veterans Court, a reversal could set a standard that newly raised defenses in the Veterans Court could repeatedly trigger remand to the Board and further delay resolution of proceedings.

Judicial economy warrants against allowing such a wasteful process.

For the foregoing reasons, I respectfully dissent from the majority's decision reversing and remanding the decision of the Veterans Court.