# United States Court of Appeals for the Federal Circuit

---

**RONALD G. DELOACH,**

*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee.*

---

2011-7147

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 08-2532, Judge Frank Q. Nebeker.

- - - - - - - - - - - - - - - - - - - - -

**WILLIAM H. GREENE,**

*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee.*

---

2011-7166

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 09-3013, Judge Mary J. Schoelen.

———————————

Decided:  January 30, 2013

———————————

IGOR V. TIMOFEYEV, Paul Hastings LLP, of Washington, DC, argued for claimant-appellants in both appeals. With him on the briefs was STEPHEN B. KINNAIRD.  Of counsel on the brief were BARTON F. STICHMAN; and LOUIS J. GEORGE, National Veterans Legal Services Program, of Washington, DC.

MARTIN F. HOCKEY, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for the respondent-appellee in both appeals.  With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MEREDYTH COHEN HAVASY, Trial Attorney.  Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and JONATHAN TAYLOR, Attorney, United States Department of Veterans Affairs, of Washington, DC in appeal no. 2011-7147.

J. WILLIAM KOEGEL, JR., Steptoe & Johnson, LLP, of Washington, DC, for amici curiae in both appeals, Military Order of the Purple Heart, et al.

———————————

Before NEWMAN, PROST, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

In these consolidated appeals, the veterans claim that their current disabilities are connected to injuries sustained during their military service. In both cases, the veterans' medical records contained at least one physician's report opining that the claimed disabilities were service-connected and at least one ambiguous or inconclusive report declining to confirm such a nexus. The Department of Veterans Affairs ("VA") relied upon these latter medical opinions in denying the veterans entitlement to service-connected disability benefits, and the Board of Veterans' Appeals ("Board") affirmed. Finding that the medical examination did not comply with the Board's instructions and that the Board failed to explain its reasons and bases for denying service connection, the U.S. Court of Appeals for Veterans Claims remanded. *Deloach v. Shinseki*, No. 09-4505, 2011 U.S. App. Vet. Claims LEXIS 512, at *1 (Vet. App. April 29, 2011); *Greene v. Shinseki*, No. 09-3013, 2011 U.S. App. Vet. Claims LEXIS 873, at *1 (Vet. App. April 26, 2011). Specifically, the Court of Appeals for Veterans Claims held that remand, rather than reversal, was the appropriate remedy where the Board's decision lacks an adequate statement for its bases, or where the evidence of the record is inadequate.

For the reasons outlined below, we agree the remand was appropriate and *affirm*.

## I. BACKGROUND

### A. RONALD G. DELOACH

Ronald G. Deloach served as a Neuropsychiatric Specialist in the Army from 1969 to 1971. He was tasked with restraining, treating, and counseling fellow soldiers

returning from the combat zone. In 1974, Mr. Deloach was hospitalized and diagnosed with catatonic schizophrenia. In connection with several additional hospitalizations between 1974 and 1978, he was diagnosed with schizophrenic reaction of chronic, paranoid type as well as anxiety and depression.

Mr. Deloach filed a disability claim for service connection with respect to schizophrenia, depression, and PTSD in December 2001. In June 2002, the Veterans Affairs Regional Office ("VARO") found nothing linking a mental condition to military service and, therefore, denied Mr. Deloach entitlement to service connection.

In November 2002, Mr. Deloach timely filed a Notice of Disagreement with the VARO's denial and requested that the VA review his claim. The VA issued a Statement of the Case in December 2002, which reaffirmed the denial. Mr. Deloach appealed to the Board.

In its review, the Board considered medical records from Mr. Deloach's private treating physician, Dr. Linda Jenness-McClellan. In a January 2004 letter, Dr. Jenness-McClellan concluded that Mr. Deloach had significant depression and symptoms characteristic of PTSD and that "[Mr. Deloach's] presentation and report strongly indicates that his initial schizophrenic break resulted from stress encountered as a psychiatric technician caring for maimed psychiatric veteran returnees from Vietnam." Deloach Joint App'x at 946.

In September 2004, the Board remanded the case to the VARO with instructions that Mr. Deloach undergo further psychiatric evaluation by a VA physician for a diagnosis of all his psychiatric disabilities. Additionally, the Board requested that the examination report include an opinion on the etiology of each disability diagnosis.

In April 2005, the VA again issued a Statement of the Case denying Mr. Deloach entitlement to service connection. The VA considered new evidence provided by the VA examiner Dr. Lanette Atkins. The VA noted Dr. Atkins' diagnosis of chronic schizophrenia and that her findings of evidence of psychosis as early as 1974 were consistent with Dr. Jenness-McClellan's opinion. Finding that evidence demonstrated development of a mental disorder more than one year after Mr. Deloach's discharge from active duty in 1971, Dr. Atkins could not confirm a service connection without speculating.

Mr. Deloach again appealed the VA's decision to the Board. In April 2006, the Board declined to make a service connection decision based on the evidence of record and remanded to the VARO for further development. The Board explained that the VA examiner failed to comply with remand instructions to provide an opinion on the etiology of Mr. Deloach's disability diagnosis. Furthermore, the Board found no discussion in the examiner's report as to whether Mr. Deloach satisfied the criteria for a PTSD diagnosis.

In May 2007, in accordance with the Board's remand instructions, the VA provided another evaluation of Mr. Deloach's mental condition. Another VA examiner, Dr. Monica Wright, offered a primary diagnosis of psychosis, but found that Mr. Deloach did not meet the criteria for symptoms of PTSD. In September 2007, the VA issued a Deferred Rating Decision notifying Dr. Wright that her examination failed to discuss the etiology of Mr. Deloach's diagnosis and did not comply with the Board's instructions. Dr. Wright submitted a follow-up report addressing the question of etiology in November 2007. Her report indicated that the history of Mr. Deloach's illness during his military service is unclear due to a scarcity of available service medical records. Dr. Wright concluded that:

> There is not presently a way to address the etiology of [Mr. Deloach's] disorder. According to the sixth edition of Kaplan and Sadock's Synopsis of Psychiatry post-1991, there is a direct quote that says, "The cause or etiology of schizophrenia is not known." Therefore, I cannot address it, and to do so would result in mere speculation on my part.

Deloach Joint App'x at 1454. As a result, the VA issued a Statement of the Case in December 2007 which denied entitlement to service connection. The VA pointed to Dr. Wright's opinion that etiology was indeterminable at the time of her examination and concluded that the evidence of record does not provide sufficient connection between Mr. Deloach's schizophrenia and his military service. Mr. Deloach appealed the VA's decision to the Board for a third time.

In May 2008, the Board affirmed the VA's decision, which Mr. Deloach then appealed to the Court of Appeals for Veterans Claims. Mr. Deloach argued that the Board erred in denying his claim of entitlement to service connection for his mental disability and urged the court to reverse the Board's decision under the "clearly erroneous" standard. Specifically, Mr. Deloach asserted that reversal is appropriate because the Board's decision is "clearly erroneous in light of the uncontroverted evidence in [his] favor."

The Court of Appeals for Veterans Claims held that reversal was not appropriate under the clearly erroneous standard because such a reversal would require the court to analyze the opinions of Dr. Jenness-McClellan and Dr. Atkins in the first instance. Instead, the court ruled that a remand was required because it was unclear whether the Board adequately considered all evidence in its evaluation, including the records of Dr. Jenness-McClellan, and provided a sufficient reason for denial of service connec-

tion. The Court of Appeals for Veterans Claims stated that "the lack of an adequate statement of reasons or bases frustrates judicial review, and the failure to provide an adequate medical examination involves factual development." *Deloach*, 2011 U.S. App. Vet. Claims LEXIS 512, at *8. The court observed that the Board did not comply with its remand instructions to ensure that the medical examination met instructions outlined by the Board; specifically, acquiring an opinion on the etiology of Mr. Deloach's mental condition. The Court of Appeals for Veterans Claims concluded that remand was required to provide an adequate medical examination.

## B. WILLIAM H. GREENE

Mr. Greene served on active duty from February 6, 1979 to February 5, 1983. During his station at Fort Hood in 1982, Mr. Greene injured his left foot while playing football. That year, a physician treated him for a "foot injury" and diagnosed his injury as a sprain. Mr. Greene reported ongoing pain, "swollen or painful joints," and "foot trouble" in his separation medical examination.

In December 2002, Dr. Edward A. Carrillo, a private physician had opined that Mr. Greene's foot injuries were connected to military service. Similarly, in December 2004, Dr. Richard DiBacco, another private physician, rendered an opinion that Mr. Greene's foot disability was a causal result of the original injury at Fort Hood.

Mr. Greene filed a claim for service connection with respect to a bilateral foot condition in January 2001. The VARO denied Mr. Greene's claim for service connection, stating that evidence shows the condition existed prior to service. Next, Mr. Greene submitted a Statement in Support of Claim requesting that his claim for service-connected compensation be reopened based on the medical

nexus provided by Dr. Carrillo.  In the pertinent part, Dr. Carrillo's report stated that:

> After reviewing his military records it was noted that Mr. Greene was seen on base for left foot pain in October of 1982 . . . . Military service duties included activities such as marching, hiking, and other duties that involve the feet . . . . It is of my opinion that Mr. Greene's left foot problem is military service related since the problem began while in the military and in the performance of the usual military service activities.

Greene Joint App'x at 403.

In August 2003, the VARO again denied Mr. Greene's claim for service connection on the grounds that recent evidence submitted, including Dr. Carrillo's medical report, was not new material.  Mr. Greene filed another Statement in Support of Claim in November 2003, requesting review and reconsideration of Dr. Carrillo's opinion, and adding a claim for a secondary knee injury resulting from the foot injury.

In April 2004, the VARO denied service connection. Mr. Greene appealed to Board on May 6, 2005.  The Board remanded to the VARO twice on August 2007 and November 2008 with instructions to provide Mr. Greene an examination and opinion addressing the nature and etiology of his foot disability.

In December 2008, a VA Compensation & Pension examination ("C&P exam") diagnosed residuals of a left ankle sprain with pain and limited motion and reported that the onset of the injury was November 1982 at Fort Hood.  Yet the C&P exam concluded that the injury was "at least as likely as not less than 50/50 the cause of current symptomatology of left foot and ankle pain." Greene Joint App'x at A669–70.  Based on evidence from

the C&P exam, the VARO continued its denial of Mr. Greene's claim because his "left ankle sprain . . . is less likely than not the cause of [his] current left foot problems." Greene Joint App'x at 685.

Mr. Greene appealed to the Board which, in June 2009, considered his claim for the third time. The Board found that the private physicians' opinions—from Drs. Carrillo and DiBacco—in favor of service connection less probative than the C&P examiner's opinion, which, according to the Board's interpretation, did not support service connection. The Board discredited the private physicians' opinions because they allegedly did not review the entire claim file, did not address a years-long symptomatology gap, and did not discuss relevant facts in the case. In contrast, the Board found the C&P examiner's opinion probative because it reviewed all the evidence and offered a thorough rationale for its opinion that was supported by the record. The Board found that the preponderance of the evidence was against awarding service connection and, therefore, denied Mr. Greene's claim.

Mr. Greene appealed to the Court of Appeals for Veterans Claims, which issued an opinion in April 2011 vacating the Board's denial and remanding the case for additional development. It determined that the Board's decision to attribute less weight to the private physicians' opinions and more probative value to the C&P exam was based on findings that were (1) inadequate and (2) either erroneous or unclear. In addition, the court noted that the Board ignored internal inconsistencies in the C&P examiner's report and failed to provide an adequate statement of reasons and bases for why it found that report more probative. In light of the incomplete record resulting from the Board's inadequate findings, the Court of Appeals for Veterans Claims held that reversal was not

appropriate. Instead, it remanded the matter to the Board.

These appeals of the remand orders followed. We have jurisdiction pursuant to 38 U.S.C. § 7292(a), (c).

## II. ANALYSIS

### A. JURISDICTION

The Secretary argues that this court lacks jurisdiction to review the decisions remanding Mr. Deloach's and Mr. Greene's cases to the Board. Generally, we decline to review remand orders of the Court of Appeals for Veterans Claims because they are viewed as non-final decisions. *See Ebel v. Shinseki*, 673 F.3d 1337, 1340 (Fed. Cir. 2012); *Joyce v. Nicholson*, 443 F.3d 845, 849 (Fed. Cir. 2006); *Williams v. Principi*, 275 F.3d 1361, 1363 (Fed. Cir. 2002). *But see Byron v. Shinseki*, 670 F.3d 1202, 1204 (Fed. Cir. 2012); *Stevens v. Principi*, 289 F.3d 814, 817 (Fed. Cir. 2002); *Adams v. Principi*, 256 F.3d 1318, 1320 (Fed. Cir. 2001). Unlike statutes governing cases appealed from other tribunals, the jurisdictional statute implicated by these appeals does not explicitly premise appellate review on the finality of the decision. *Compare* 28 U.S.C. § 1295(a)(1) (2006) (conferring jurisdiction over "an appeal from a final decision of a district court"), *with* 38 U.S.C. § 7292(a) (2006) ("After a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision . . . ."). Thus, we have recognized a narrow exception and depart from the strict finality rule only when three conditions, termed the *Williams* conditions, are met:

> (1) [T]here must have been a clear and final decision of a legal issue that (a) is separate from the remand proceedings, (b) will directly govern the remand proceedings or, (c) if reversed by this

court, would render the remand proceedings un-
necessary; (2) the resolution of the legal issues
must adversely affect the party seeking review;
and, (3) there must be a substantial risk that the
decision would not survive a remand, i.e., that the
remand proceeding may moot the issue.

*Williams*, 275 F.3d at 1364 (footnotes omitted).

While apparently conceding that the appeals of Mr.
Deloach and Mr. Greene require resolution of issues that
adversely affect the appellants (the second *Williams*
condition), the Secretary contends that neither appeal
presents a final decision on a legal issue or a substantial
risk that the decision would not survive a remand. Those
contentions, however, reflect a misunderstanding of the
legal issue appellants have pressed on their appeals.
Appellants do not assert that the Court of Appeals for
Veterans Claims misinterpreted its standard of review
when it determined that initial fact finding by the Board
was required or that the Board failed to properly explain
why it rejected certain evidence and favored other evi-
dence. Rather, the Appellants maintain that they are
legally entitled to a reversal on the record, and should not
be required to undergo a remand.

This case involves the same legal issue presented in
three cases where we had jurisdiction, *Adams*, *Stevens*,
and *Byron*: whether the Court of Appeals for Veterans
Claims has authority to reverse the Board instead of
remanding the case. As in *Bryon*, where the Court of
Appeals for Veterans Claims explicitly analyzed its statu-
tory authority and held that it did not have the authority
to reverse and must remand, the court in the instant
appeals held that reversal would be impermissible or not
appropriate notwithstanding Appellants' contentions that
the record required reversal rather than remand. *Com-
pare Byron v. Shinseki*, No. 09-4634, 2011 U.S. App. Vet.

Claims LEXIS 1293, at \*17 (Vet. App. Jun. 20, 2011) ("The Court will not address whether direct service connection and an earlier effective date are warranted because that would require it to make factual determinations in the first instance based on the evidence the Board failed to consider, which it may not do. Therefore, reversal is precluded as a remedy, and remand is appropriate." (citations omitted)), *with Deloach*, 2011 U.S. App. Vet. Claims LEXIS 512, at \*7–8 ("To reverse the Board's decision as the appellant requests would require the Court to analyze the opinions of Drs. Jenness-McClellan and Atkins in the first instance and to weigh those opinions against the other evidence of record. Because the Court is generally prohibited from finding facts in the first instance, this would be impermissible." (citations omitted)), *and Greene*, 2011 U.S. App. Vet. Claims LEXIS 873, at \*13 ("Although, the appellant asks this Court to reverse the Board's erroneous findings and order the award of service connection, such a request is not appropriate in this case. The Court, therefore, will remand this matter to the Board." (citations omitted)). Similarly, *Stevens* involved a situation where the Court of Appeals for Veterans Claims ordered remand for an alleged prohibited purpose—to allow the government to make up a shortfall in its evidence to rebut a presumptive entitlement to compensation. 289 F.3d at 817. Likewise, a clear and final decision on a legal issue existed in *Adams* when the appellant argued that the Court of Appeals for Veterans Claims should have ruled, without a remand, that the government offered insufficient evidence to rebut the presumption of sound condition. 256 F.3d at 1321. All of these cases, like the ones pressed by Appellants, implicate a legal right not to be subjected to a remand, which if reversed by this court, would render the remand proceedings unnecessary.

These cases are readily distinguished from *Ebel* where the Court of Appeals for Veterans Claims remanded when it found the examiner's report insufficient to establish direct service connection. *See* 673 F.3d at 1341. The court in the instant appeals, as in *Byron*, explicitly held that it did not have authority to reverse. The court in *Ebel* simply remanded without addressing whether it had authority to remand. *See Ebel v. Shinseki*, No. 08-4130, 2011 U.S. App. Vet. Claims LEXIS 250, at *6, 10–11 (Vet. App. Feb. 7, 2011). It follows that while the decision in *Byron* and these appeals was final as to the issue of the court's lack of authority to reverse, *Ebel* did not present a clear and final decision on that legal issue as required under the first *Williams* condition. Thus, while the first *Williams* condition was not satisfied in *Ebel*, it is satisfied in the instant appeals.[1]

These cases present an even more compelling circumstance for an immediate review than *Byron*. The Board on remand in *Byron* still had to address whether the appellant had established a direct service connection, and if so, whether she was entitled to an earlier effective date. *Byron*, 2011 U.S. App. Vet. Claims LEXIS 1293, at *17.

---

[1]    To be clear, these appeals meet the narrow exception to finality enunciated in *Williams* exclusively on the rationale articulated in *Byron*; that is, after addressing the matter, the CAVC determined that it lacked authority to reverse the Board rather than remand the case. *Byron*, 670 F.3d at 1205 ("[T]his is one of the rare circumstances where review of a remand order is proper."). It remains true that appellants cannot satisfy the *Williams* conditions by merely appealing a remand order and arguing that the petitioner was entitled to a reversal on the record. *Ebel*, 673 F.3d at 1341 n.1. Otherwise, the narrow exception under *Williams* would swallow the strict rule of finality. *Id.*

Notwithstanding the remaining issues that could only be addressed on remand, this court held that jurisdiction was proper in *Byron*. 670 F.3d at 1205. Appellants in the instant cases alleged that the Board clearly erred in not awarding a service connection based on the record as it stood; thus, reversal would inure in them the relief they seek without further fact-finding on tangential matters.

The Secretary makes the related jurisdictional argument that the instant appeals do not involve a "challenge to the validity of any statute or regulation or any interpretation therefore," or require interpretation of constitutional or statutory provisions. *See* 38 U.S.C. § 7292(c). This, the Secretary contends, divests the court of jurisdiction notwithstanding satisfaction of the *Williams* conditions. Prior decisions by this court, however, make clear that questions concerning the Court of Appeals for Veterans Claims' statutory authority to remand are legal questions that negate the Secretary's alternative jurisdictional challenge. *Myore v. Principi*, 323 F.3d 1347, 1353 (Fed. Cir. 2003) (citing *Stevens*, 289 F.3d at 818 and *Adams*, 256 F.3d at 1321).

Turning to the third *Williams* condition, there is undoubtedly a substantial risk that the legal issue will not survive a remand. A remand will surely moot Appellants' claim that they have a legal right to a favorable decision without the need for a remand. *Byron*, 670 F.3d at 1205. "Our cases have distinguished (1) situations where an issue might be mooted by a failure to present sufficient evidence on remand from (2) situations where the very authority of the [Court of Appeals for Veterans Claims] to remand might be mooted by the remand itself." *Duchesneau v. Shinseki*, 679 F.3d 1349, 1353 (Fed. Cir. 2012). This court does not have jurisdiction in cases presenting the first situation. *See, e.g.*, *id.*; *Donnellan v. Shinseki*, 676 F.3d 1089, 1093 (Fed. Cir. 2012); *Joyce*, 443 F.3d at

850; *Myore*, 323 F.3d at 1352–53; *Winn v. Brown*, 110 F.3d 56, 57 (Fed. Cir. 1997). This is true regardless of whether the appellant would win or lose based on the facts and legal standards confronted on remand so long as the disputed issue would survive a subsequent appeal. *See Winn*, 110 F.3d at 57. Conversely, in cases like *Adams*, *Stevens*, and *Byron*, we have held that challenges questioning the authority of the Court of Appeals for Veterans Claims to order a remand, which might not survive a remand, satisfied the third *Williams* condition and, therefore, constituted an appealable final decision. *Duchesneau*, 679 F.3d at 1354. Because the instant appeals present the same question of the authority of the court to reverse instead of remanding, jurisdiction is therefore proper.

## B.  DISCUSSION

Congress has limited the scope of our review of a decision of the Court of Appeals for Veterans Claims by statute. *See* 38 U.S.C. § 7292. Absent a constitutional issue, this court may not review challenges to factual determinations or challenges to the application of a law or regulation to facts. 38 U.S.C. § 7292(d)(2). We review questions of law, including the interpretation of statutes and regulations, *de novo*. *DeLaRosa v. Peake*, 515 F.3d 1319, 1321 (Fed. Cir. 2008).

The Court of Appeals for Veterans Claims has "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." 38 U.S.C. §7252(a). On review, 38 U.S.C. §7261(a)(4) instructs the court to examine the Board's findings of material fact according to a "clearly erroneous" standard. 38 U.S.C. § 7261(a)(4); *see also Padgett v. Principi*, 19 Vet. App. 133, 145 (2005) (en banc) (identifying the Board's decision regarding service connection as a finding of fact that the court "reviews under the 'clearly erroneous' standard of review set forth in 38

U.S.C. § 7261(a)(4)"), *withdrawn on other grounds*, 19 Vet. App. 334 (2005), *rev'd*, 473 F.3d 1364 (Fed. Cir. 2007). Where the Court of Appeals for Veterans Claims determines that findings of material fact adverse to the claimant are clearly erroneous, the court shall "hold unlawful and set aside *or reverse* such finding[s]." 38 U.S.C. §7261(a)(4) (emphasis added). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Andino v. Nicholson*, 498 F.3d 1370, 1373 n.1 (Fed. Cir. 2007) ("To be 'clearly erroneous' there must be a definite and firm conviction that a mistake has occurred."); *Sanchez-Benitez v. Principi*, 259 F.3d 1356, 1360 (Fed. Cir. 2001).

In reviewing for clear error, the Court of Appeals for Veterans Claims is required under § 7261(b) to "take due account of the Secretary's application" of the benefit of the doubt standard outlined in 38 U.S.C. § 5107(b). 38 U.S.C. § 7261(b); *see also Mariano v. Principi*, 17 Vet. App. 305, 313 (2003). The statutory provision establishing the benefit of the doubt standard provides:

> The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

38 U.S.C. § 5107(b).

The dual requirement placed on the Court of Appeals for Veterans Claims by § 7261(a)(4) and (b)—to hold

unlawful and set aside or reverse clearly erroneous findings of fact and take due account of the Secretary's application of the benefit of the doubt standard—indicates congressional intent to invest the court with the authority to reverse certain Board decisions.  Congress' enactment of the Veterans Benefits Act of 2002, which altered the scope of the court's judicial review, expressly empowered it to reverse adverse findings of material fact that are "clearly erroneous" rather than remand to the Board for re-determination.  Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 401(c), 116 Stat. 2820, 2832 (codified as amended at 38 U.S.C. § 7261(a)(4)).

The language of the statute and legislative history indicates that the Court of Appeals for Veterans Claims has *full* authority *to reverse* cases that are clearly erroneous.  *See* 38 U.S.C. § 7261(a)(4).  Congress added the "or reverse" language to the statute with the enactment of the Veterans Benefits Act of 2002 ("VBA").  *See* Pub. L. No. 107-330, § 401(c), 116 Stat. at 2832.  The problem in 2002 with the appeals process was the number of cases being remanded by the court and the delay those remands caused.  *See Pending Legislation: Hearing Before the S. Comm. on Veterans' Affairs*, 107th Cong. 60, 66 (2002) (statement of James Fischl, Director, The American Legion) (addressing the long wait created by the remand of cases by the Court of Appeals for Veterans Claims back to the Board).  Congress added the "or reverse" language to mitigate this problem.  *See id.* (expressing the view that the "or reverse" language would "address[] a longstanding concern of The American Legion . . . [and] provide more timely final decisions on issues on appeal.").

It was Congress' intent to clarify the Court of Appeals for Veterans Claims' authority and expressly instruct the court that it had the power to reverse.  *See* 148 Cong. Rec. 22,913 (2002) (statement of Sen. Rockefeller).  Senator

Rockefeller, Chairman of the Committee on Veterans' Affairs, explained that "the addition of the words 'or reverse' after 'and set aside' . . . is intended to emphasize that the [Court of Appeals for Veterans Claims] should reverse clearly erroneous findings when appropriate, rather than remand the case." *Id*. Representative Lane Evans, a House committee member on the legislation, expressed the same when urging for passage of the bill. *Id*. at 22,594 (explaining that the legislation "clarifies the authority of the Court of Appeals for Veterans Claims to reverse decisions of the Board of Veterans Appeals in appropriate cases"). Additionally, the House and Senate Committees' Joint Explanatory Statement to the VBA noted that the addition of the language indicates that both Houses of Congress "*expect* the Court to reverse clearly erroneous findings when appropriate, rather than remand the case." *Id*. at 22,917 (emphasis added). Consequently, the court is free to exercise reversal power in appropriate cases and is not legally restricted only to remand.

Against this backdrop, we turn to the instant appeals. Appellants argue that the Court of Appeals for Veterans Claims erred by remanding instead of reversing the Board's decision under the clearly erroneous standard. Reversal is mandated, they maintain, when the records are viewed in their entirety and after they have been given the benefit of the doubt under § 5107. Appellants reason that due to the interplay between the court's ability to reverse and veteran's entitlement to the benefit of the doubt, it has a duty to independently weigh the entirety of the evidence to determine whether the Board's factual findings are clearly erroneous. We disagree. The Court of Appeals for Veterans Claims, as part of its clear error review, must *review* the Board's weighing of the evidence; it may not weigh any evidence itself. As we have recognized, the statute prohibits the court from

making factual findings in the first instance. *Andre v. Principi*, 301 F.3d 1354, 1362 (Fed. Cir. 2002) (quoting 38 U.S.C. § 7261(c)).

> The statutory provisions are consistent with the general rule that appellate tribunals are not appropriate fora for initial fact finding. Thus, the Supreme Court has held that when a court of appeals reviews a district court decision, it may remand if it believes the district court failed to make findings of fact essential to the decision; it may set aside findings of fact it determines to be clearly erroneous; or it may reverse incorrect judgments of law based on proper factual findings; "[b]ut it should not simply [make] factual findings on its own."

*Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (alterations in original) (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). We reaffirm that the evaluation and weighing of evidence are factual determinations committed to the discretion of the fact-finder—in this case, the Board. *Bastien v. Shinseki*, 599 F.3d 1301, 1306 (Fed. Cir. 2010). But where the Board has performed the necessary fact-finding and explicitly weighed the evidence, the Court of Appeals for Veterans Claims should reverse when, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed. *U.S. Gypsum*, 333 U.S. at 395.

Appellants also argue that the Court of Appeals for Veterans Claims impermissibly remanded after allegedly finding that the evidence was controverted. As explained below, we do not perceive the courts' remand orders as contingent upon the existence of controverted evidence, but rather on procedural and substantive defects in the proceedings before the Board. Thus, this argument entitles Appellants to no relief. To be clear, this opinion

does not foreclose the Court of Appeals for Veterans Claims from finding that reversal is appropriate where, despite the existence of controverting evidence, a finding of material fact is clearly erroneous. *See Padgett*, 19 Vet. App. at 147.

In Mr. Deloach's case, the Court of Appeals for Veterans Claims held that the Board failed to provide adequate reasons and bases for rejecting the opinions of Drs. Jenness-McClellan and Atkins. "The Board is statutorily compelled by [38 U.S.C. §] 7104(d)(1) to articulate reasons and bases to provide for judicial review of its findings and conclusions." *Sickels v. Shinseki*, 643 F.3d 1362, 1365 (Fed. Cir. 2011). Without an adequate statement, it is impossible to understand the precise basis for the Board's decision and conduct informed appellate review. The Court of Appeals for Veterans Claims also determined that the VA failed to provide an adequate medical exam despite the Board's earlier order of an examination providing an opinion on the etiology of Mr. Deloach's current diagnosis. The VA is required to provide a medical examination when "necessary to make a decision on the claim." 38 U.S.C. § 5103A(d)(1). And if inadequate, the VA should request clarification or order a new examination. *See* 38 C.F.R. § 4.2. Remand is appropriate under either of these defects identified by the Court of Appeals for Veterans Claims. *See Adams*, 256 F.3d at 1322 ("If the reviewing court simply cannot evaluate the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1984))).

In Mr. Greene's case, the Court of Appeals for Veterans Claims viewed the Board's justification for according less probative weight to the opinions of Drs. Carrillo and DiBacco as unclear, inadequate, and legally erroneous.

Similarly, it found inadequate reasons and bases for affording the C&P examiner's report more probative value, particularly when it was internally inconsistent and ambiguous. As we previously recognized, "when the Board misinterprets the law and fails to make the relevant initial factual findings, 'the proper course for the Court of Appeals for Veterans Claims [is] to remand the case to the [Board] for further development and application of the correct law.'" *Byron*, 670 F.3d at 1205 (citing *Hensley*, 212 F.3d at 1264); *Stevens*, 289 F.3d at 817–18 (holding that when the Board commits a legal error "the appropriate remedy is normally for the reviewing court to remand"); *Adams*, 256 F.3d at 1322 (remanding for explanation of a medical examination or a supplemental exam given the ambiguity of the original). As was true in Mr. Deloach's case, the Court of Appeals for Veterans Claims properly ordered remand in Mr. Greene's. No doubt situations will arise where clearly erroneous judgments will be based on proper factual findings where the court must reverse rather than remand. Neither of these appeals, however, present such a situation.

## III. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals for Veterans Claims' decision remanding the case to the Board.

**AFFIRMED**

COSTS

Each party shall bear its own costs.