# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-5699

JOE D. ROUSE, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided April 13, 2021)

*Madeline Becker*, of Providence, Rhode Island, was on the brief for the appellant.

*William A. Hudson, Jr.*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; *Anna Whited*, Deputy Chief Counsel; and *Lilian Leifert*, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, TOTH, and LAURER, *Judges*.

TOTH, *Judge*: On December 7, 2020, this Court in a single-judge memorandum decision affirmed a July 2019 Board decision denying TDIU to Army veteran Joe D. Rouse. On appeal, Mr. Rouse argued that the Board erred by not adopting the definition spelled out in Social Security Administration (SSA) regulations for the term "sedentary work" (or, interchangeably, "sedentary employment"). Rejecting this argument, the Court cited to our decision in *Withers v. Wilkie*, 30 Vet.App. 139, 148 (2018), to note that it cannot provide a fixed definition for the term "sedentary work" as that term does not appear in any statute or regulation related to veterans benefits and so has no independent legal significance. After considering the remaining arguments and the evidence of record, the Court found no error on the Board's part.

Mr. Rouse moved for reconsideration or, alternatively, panel review on the ground that the memorandum decision was contrary to *Ray v. Wilkie*, 31 Vet.App. 58, 73 (2019). Specifically, Mr. Rouse contends that the Court failed to acknowledge that *Ray* provided the independent legal significance to the phrase "sedentary work" that *Withers* found lacking.

We grant the panel review motion to address this argument.* We thus withdraw the December 7, 2020, memorandum decision and issue this decision in its stead. The Court affirms the Board's decision and again explains why the Board had no duty to consult a different agency's definition for a term that does not appear in any VA statute or regulation or other authoritative source.

## I. BACKGROUND

Mr. Rouse served in the Army from 1983 to 1987. After service, he worked primarily as a framing carpenter. In 2008, he applied to the vocational rehabilitation and employment (VR&E) program to acquire marketable job skills. At a VR&E consultation, he stated that he stopped working in 2005 to care for an aunt who had fallen ill. He also indicated functional limitations related to his back disability that manifested when doing chores, exercising, shopping, and dressing. R. at 394. He stated that his condition was exacerbated by prolonged standing and walking. *Id*. Upon enrollment in the VR&E program, he began attending school full-time at East Tennessee State University (ETSU) for computer programming. He also worked part-time at a library stocking shelves, a task he reported having little difficulty doing. R. at 3572.

In April 2009, he sought treatment for low back pain precipitated by prolonged sitting. In 2012, he left ETSU and switched to a shorter program to finish his degree because he had been "struggling with [his] studies" for some time "due to health problems." R. at 3527. He later reported to his VR&E counselor that he left ETSU because he was "overwhelmed with the upper level classes and couldn't keep up." R. at 3501. Around the same time, he began working in the prosthetic department at a VA medical center through a nonpaid work study program. He reported re-injuring his back while unloading boxes containing wheelchairs. Upon examination for this injury, a chiropractor observed that the veteran appeared to be in good general physical condition. His posture was "erect with a steady gait," and he carried a heavy backpack and cane (which he wasn't using) and placed them on the floor with "nearly full trunk flexion." R. at 3937.

Mr. Rouse was terminated from his position at the medical center in 2013 because of "noncompliance and poor work habits." R. at 3314 (referencing departures from work without

---

* Mr. Rouse's motion did not include a request for oral argument. In any event, the panel concludes that oral argument would not be of material assistance in resolving this matter. *Cf*. U.S. VET. APP. R. 34(b).

2

notice, frequent personal calls, and blatant disregard for the rules). The following year, he obtained an associate degree in art history.

In a January 2014 decision, the Board found that entitlement to TDIU had been reasonably raised as part of the veteran's 2009 increased rating claim for his back. The Board remanded the matter for further development. Mr. Rouse subsequently underwent a VA examination. He reported chronic low back pain that interfered with sitting. The examiner opined that, based solely on the veteran's service-connected low back disability, he was prevented from maintaining substantially gainful employment in "physical occupations." R. at 2679. More specifically, back pain and associated problems reduced range of motion of the spine, prevented him from repetitively lifting more than 10 pounds or pushing and pulling more than 25 pounds, and prohibited repetitive bending at the waist, twisting, or stooping. But, the examiner concluded, Mr. Rouse was not precluded from securing substantially gainful employment in "sedentary occupations." *Id.*

A June 2014 VR&E counseling report recited the veteran's physical limitations due to his service-connected disabilities and concluded that, based on the severity of his disabilities, it was "not currently . . . feasible for [him] to obtain and maintain employment." R. at 479. Subsequent VA and private reports from 2014 to 2017 generally corroborate that the veteran's service-connected disabilities caused physical limitations, including his ability to sit. Private treatment records from December 2016 and January 2017 indicate that Mr. Rouse was "doing ok" and that he could walk, ride a bicycle, and increase his social activities. R. at 316.

In a 2019 affidavit, Mr. Rouse stated that he worked various carpentry jobs from 2006 to 2009, when he retired because his service-connected conditions prevented him from performing all aspects of his job. He asserted that he tried to obtain sedentary employment but had no transferable skills and left ETSU because he couldn't sit in class for more than 30 minutes and missed class at least once per week because of back pain. He also stated that he tried to obtain a bachelor's degree in art history but had to drop out because of frequent back-related absences. And although he had obtained employment with a cleaning crew in 2014, this job lasted only one month because his back condition eventually prevented him from working and required him to use a cane.

That same month, the veteran also submitted a private vocational assessment report, which opined that service-connected disabilities prevented substantially gainful employment. Based on a telephonic interview with the veteran and review of the claims file, the report can be fairly

summarized as describing much more severe functional limitations than that described by VA personnel. Per this assessment, the veteran's ability to sit, stand, lift, walk, bend, climb, twist, kneel, squat, stoop, and lift were all drastically reduced. What's more, the report concluded, service-connected disabilities impaired the veteran's potential to transfer existing skills or learn new ones.

In the decision on appeal, the Board found that the overall record did not support Mr. Rouse's statements that he was unable to secure and maintain substantially gainful employment because of service-connected disabilities. The Board explained that the probative evidence contradicted the private vocational opinion that Mr. Rouse hasn't been able to work since 2009 and did not support the finding that he was unable to secure substantially gainful employment. The Board also considered private and VA medical opinions indicating that the veteran's impairment is due, in part, to his non-service-connected disabilities and so cannot form the basis for TDIU. Based on the extent of his service-connected disabilities and his educational and occupational background, the Board found no reason why Mr. Rouse couldn't find light custodial or maintenance work or, given his completion of college courses, office work. In other words, it found that he was capable of "some form of physical-type of work" and, in any event, could be gainfully employed in "non-physical types of occupations." R. at 15, 17.

This appeal followed.

## II. ANALYSIS

### A.

TDIU may be assigned to a veteran who is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a) (2020). Whether a veteran is unable to secure or follow substantially gainful employment is a finding of fact that this Court reviews for clear error. *Pederson v. McDonald*, 27 Vet.App. 276, 286 (2015) (en banc).

Mr. Rouse argues that the Board erred in its determination that he can secure, at the very least, sedentary work. (The July 2019 Board decision doesn't use the word "sedentary" explicitly, but much of the evidence before it did.) He specifically contends that, despite clear evidence to the contrary, the Board nevertheless found that he could obtain employment only because it failed to follow the definition of "sedentary work" set forth in SSA regulations. Appellant's Br. at 11-12 ("Sedentary employment is 'defined as one which involves sitting,' as much as two-thirds of an

4

eight hour[] day, or a little more than five hours."); *see* 20 C.F.R. §§ 404.1567(a) (2021), 404.1569a(b)-(c) (2021). Rather, the veteran asserts, the Board implicitly and improperly classified "sedentary employment" as some type of non-physical occupation.

This Court made clear in *Withers* that it cannot provide a fixed definition for the term "sedentary work" because it does not appear in any statute or regulation related to veterans benefits and so has no "independent legal significance." 30 Vet.App. at 145 (rejecting both the veteran's proffered SSA definition and the Secretary's invocation of the ordinary-meaning canon). *Withers* instead reasoned that, although "§ 4.16 does not make the concept of sedentary work an explicit TDIU factor, if the Board bases its denial of TDIU . . . on the conclusion that a veteran is capable of sedentary work, then it must explain how it interprets that concept in the context of that case." *Id*. at 148. In other words, we recognized that, while not a legally governing consideration, a veteran's ability to perform sedentary work could be a relevant factor if raised by the evidence of record. And a determination that a veteran was capable of sedentary employment can be determinative, as long as the Board provides sufficient factual context to show what it meant by the term and how its findings relate to the veteran's educational and occupational history. *See id.* The Court in *Withers* therefore remanded for the Board to explain in the context of that case "how it interpreted the examiners' use of the term [sedentary work] and how the concept of sedentary work figures into a veteran's overall disability picture and vocational history." *Id*. at 149.

Unlike in *Withers*, the Board in this case explained how it determined that the veteran was capable of certain types of work in light of his overall disability picture and prior educational and occupational history. Thus, the Board applied sufficient context to allow the Court to understand what it meant. Regarding the veteran's education, the Board noted the veteran's statement that he couldn't complete full-time courses at ETSU because he was unable to sit for more than 30 minutes in class and his back pain sometimes caused him to miss class altogether. It also noted the veteran's statement that he was unable to complete a bachelor's degree in art history degree because of back pain. But the Board noted inconsistencies, namely, that record evidence indicated that he associated his difficulty with finishing the program because of being overwhelmed with upper level classes and that he, in fact, successfully completed an art history program in 2013, receiving an associate degree.

As to the veteran's prior work history, the Board considered his statements of difficulty with prolonged sitting at work and that he retired in 2009 because of low back pain. But again, the

Board pointed out that record evidence showed that the veteran continued to work intermittently from 2007 to 2016 in jobs requiring physical labor. It also noted that the veteran was terminated because of noncompliance issues, not strictly because of his service-connected disabilities.

Finally, the Board considered the veteran's medical history, including the various private and VA medical records demonstrating that his ability to work was compromised not only by his service-connected disabilities but by non-service-connected disabilities as well. As the Board explained, several recent medical records did not indicate that Mr. Rouse was precluded from substantially gainful employment and the May 2013 chiropractor's note reflected that the veteran appeared to be in good general health, had nearly full trunk flexion, and carried a cane that he didn't use. The Board also noted record evidence indicating that Mr. Rouse remained active, e.g, riding his bicycle and working small summer jobs, irrespective of his service-connected disabilities. Moreover, the Board considered record evidence from VA counselors indicating that Mr. Rouse's inability to maintain employment was due to *non-service-connected disabilities* such as a mood disorder and hepatitis C. Thus, although the Board acknowledged difficulties sitting related to the back and associated disorders, weighing all of the evidence together, it found that he was not unemployable because of his service-connected disabilities.

Moreover, despite Mr. Rouse's assertions to the contrary, the Board considered his other physical limitations such as standing and bending over for prolonged periods of time but, given his full disability picture, it found no evidence that the veteran was precluded from obtaining substantially gainful employment with reasonable workplace accommodations. Although Mr. Rouse disagrees with the Board's determination, the Board satisfied the requirements articulated in *Withers* and fully explained its reasons for finding that the veteran was capable of work, so that TDIU wasn't warranted. *See* 30 Vet.App. at 148. The Board's factual determinations reflect a plausible reading of the record and the Court will not overturn it. *See Warren v. McDonald*, 28 Vet.App. 214, 218 (2016).

The Court has considered the veteran's other arguments, but they mostly appear to be general disagreements with the Board's findings, and assertions of this kind are not a proper basis to reject the Board's decision on TDIU. *See, e.g.*, Appellant's Br. at 21 (asserting that the veteran's service-connected conditions "would at least as likely as not result in significant amount of time off and reduced work productivity"). Mr. Rouse asks the Court to reverse the Board's findings. But reversal is appropriate only when, after the Board "has performed the necessary fact-finding and

6

explicitly weighed the evidence," the Court is firmly convinced that the Board reached the wrong conclusion. *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013). We are not so convinced. The Court's job is to "*review* the Board's weighing of the evidence; . . . not weigh any evidence itself." *Id.* Whatever we might have thought about entitlement to TDIU had we been the Agency factfinder, the Court cannot say that the Board ignored or clearly erred in weighing any evidence in this case.

B.

The above analysis tracks the Court's December 7, 2020, memorandum decision. Moving for post-decisional review, Mr. Rouse does not challenge the Court's decision with respect to any of the factual assessments the Board made. Instead, he contends that the memorandum decision erred in relying on *Withers* because our holding in *Ray* effectively uprooted *Withers*. Specifically, *Ray* interpreted the phrase "unable to secure and follow substantially gainful employment" in § 4.16(a) to comprise both economic and noneconomic components, which required consideration of a wide range of factors as relevant to the meaning of that phrase. 31 Vet.App. at 73. One of the factors that "attention must be given to," per the Court, is a veteran's ability to perform sedentary activities, citing SSA regulation 20 C.F.R. § 404.1567. *Id.*

Mr. Rouse maintains that the term "sedentary employment" obtained legal significance when *Ray* listed it as a relevant factor in a TDIU analysis. As a consequence, he argues, VA must now adopt the SSA's specific definition of "sedentary work." *See, e.g.*, Motion at 4 (asserting that "the *Ray* Court has issued binding precedent that interprets § 4.16 in a way that affords legal significance to a veteran's ability to perform sedentary work, a term that should be understood using the generally-accepted meaning provided by SSA and the Department of Labor"); *see also id.* at 2 ("*Ray* then held that, when assessing the claimant's ability to perform those physical acts, VA must, in the absence of adopting its own definition, use Social Security's guidance as to the physical exertion requirements of work when adjudicating TDIU . . . when the veteran's service-connected disabilities are physical in nature.").

There are a few difficulties in this argument, however. First, *Ray* did nothing to disturb the premise anchoring *Withers*—that the term "sedentary employment" lacked independent legal significance because it does not appear in any statute or regulation related to veterans law. *See* 31 Vet.App. at 73 ("[T]o be clear, we *don't* adopt Social Security's regulations as VA regulations."). In 38 U.S.C. § 501(a), Congress authorized the Secretary to promulgate regulations

7

spelling out the nature and extent of evidence required to establish a right to benefits; at present, neither Congress nor the Secretary has promulgated a law that explicitly tethers a benefit to a veteran's ability to perform sedentary employment. The term remains absent from any relevant statute, regulation, or other authority binding on the Agency.

This absence brings us to the second problem with the argument. In the administrative law context, the role of the judiciary is limited to interpreting laws written by other branches of government. *See Plaut v. Spendthrift Farm Inc.*, 514 U.S. 211, 221 (1995) (noting the "sense of a sharp necessity to separate the legislative from the judicial power"); *see also Vt. Yankee Nuclear Power Plant Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978). Thus, Congress authorized this Court, "to the extent necessary to its decision," to "interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms *of an action of the Secretary*." 38 U.S.C. § 7261(a)-(a)(1) (emphasis added). Courts generally do not define their own terminology because they do not write substantive laws that establish rights and benefits. In this sense, a court's opinion can be unclear, but it is not "ambiguous" in the way a statute or regulation is. In other words, "the language of an opinion is not always to be parsed as though we were dealing with language of a statute." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979).

Recognizing the essential but limited role of courts as interpreting laws promulgated by other branches of government, Congress included a specific directive that shapes our mandate to interpret statutes, regulations, or terms of an action by the Secretary—namely that we do so "to the extent necessary" to render a decision. Thus, section 7261(a)(1) doesn't authorize this Court to "interpret" a phrase found in one of its opinions—one *not* found in any relevant statute or regulation—and thereby transform it into a term of independent legal significance. We have no freestanding mandate to wander about prospectively in search of unclear terms to define. A mere discussion of a term such as "sedentary employment" in one of our decisions does not generate an objective legal definition for such term.

Nor do we think that *Ray* attempted to do so. It's true that *Ray* listed a veteran's ability to perform sedentary employment as a relevant consideration to the ability to perform "substantially gainful employment," a phrase that does appear in § 4.16(a). But there is no real conflict on this point between *Ray* and *Withers*. Indeed, *Withers* had already recognized that, "where a veteran's ability to perform sedentary work is a basis for the Board's decision, the meaning of sedentary

8

work must be determined from the particulars of the medical opinion in which it is used." 30 Vet.App. at 147. Thus, "although § 4.16 does not make the concept of sedentary work an explicit TDIU factor, if the Board bases its denial of TDIU in part on the conclusion that a veteran is capable of sedentary work, then it must explain how it interprets that concept in the context of that case." *Id.* at 148. *Ray* tread no new ground in recognizing that a veteran's ability to perform sedentary employment could be germane to a TDIU analysis. While *Ray* noted the concept as a "potentially relevant" factor, the Court was clear that it wasn't "creat[ing] a checklist that must be run completely through in every case." 31 Vet.App. at 73.

In short, there's no indication that *Ray* undermined the Court's ruling in *Withers* the way Mr. Rouse contends. Indeed, it would be odd to read *Ray* that way, as one panel may not proffer an opinion that "conflicts materially" with an earlier panel opinion. *Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992); *see also Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579 (Fed. Cir. 1989) ("Where conflicting statements such as these appear in our precedent, the panel is obligated to review the cases and reconcile or explain the statements, if possible. If not reconcilable and if not merely conflicting dicta, the panel is obligated to follow the earlier case law which is the binding precedent.").

We also observe that the Federal Circuit examined this exact issue recently in *Minns v. Wilkie*, 835 F. App'x 1015 (Fed. Cir. 2020), and affirmed a memorandum decision applying *Withers*. Although unpublished and, therefore, not binding as precedent, *Minns* nonetheless proves insightful regarding a court's obligation to provide definitions for terms not found in a governing legal text. There, as here, the veteran contended that this Court erred by failing to provide a certain definition for "sedentary employment." The Federal Circuit pointed out that the grant of authority within section 7261(a)(1) for this Court to "determine the meaning" of terms related to an action of the Secretary is cabined by the limiting language "to the extent necessary to its decision." *Id.* at 1018.

As to the necessity of defining "sedentary employment," the Federal Circuit took no issue with the reasoning that the Board provided sufficient factual context to understand how it construed the term and what significance it had in the overall TDIU adjudication, given the evidence of record. In other words, it was not necessary to define the term because the requirement that the Board provide sufficient context enabled a reviewing court and the veteran to understand how the adjudicators construed that term and how it factored in the assessment of entitlement to

TDIU. The Federal Circuit noted, as this Court did in *Withers*, that alternative means exist to achieve a uniform definition for "sedentary employment" via a petition for rulemaking under 5 U.S.C. § 553(e) to add a formal definition of the term to § 4.16.

And, as most relevant here, the Federal Circuit rejected the notion that VA can be compelled to use another agency's substantive criteria in the TDIU context.

> Mr. Minns also appears to argue that we should order the VA to adopt the SSA's definition of "sedentary work." *See* Appellant's Br. 24–26 (citing 20 C.F.R. § 404.1567(a)); *see also* 20 C.F.R. § 404.1567(a) (defining "sedentary work" for SSA purposes as "involving lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools"). This argument is misplaced. "Given the comprehensive statutory and regulatory scheme for the award of veterans' benefits, it would be not be appropriate for us to impose" an SSA definition on the VA. *White v. Principi*, 243 F.3d 1378, 1381 (Fed. Cir. 2001). Further, "Congress left it to the VA, and not this court, to determine how best to weigh evidence in veterans' benefits cases," and "our limited role in this area is further reinforced by our general inability to review Veterans Court decisions on factual issues." *Id.*

*Minns*, 835 F. App'x at 1018 n.4 (brackets omitted); *see also Withers*, 30 Vet.App. at 149 ("The Secretary is certainly free to promulgate regulations in line with SSA's, but that's a decision for the Secretary to make and not for this Court to impose.").

Although there is nothing so tedious as a twice-told tale, we repeat: There is no warrant for this Court to define the term "sedentary work" or "sedentary employment," still less any reason to compel VA's adoption of the specific definition used by SSA or any other agency.

### III. CONCLUSION

Accordingly, the motion for panel review is granted. The December 7, 2020, memorandum decision is withdrawn, and this decision is issued in its place. For the reasons discussed above, the July 29, 2019, Board decision is AFFIRMED.